## Foster & Co. *versus* Fowler & Co.

60　27
142　614
60　27
152　584
60　27
169　631
60　27
170　7
60　27
182　148
60　27
213　⁴470
60　27
e220　⁰606
e220　¹608
60　27
225　⁰491

1. The entry of the claim of a mechanic is parcel of his legal remedy, the *whole* of which remedy, including the right to issue execution, must be considered in order to determine whether it is the proper remedy in any given case.

2. Corporations (other than municipal which are purely public) are divided into public,—agencies of the public directly affecting it, and private, affecting the public indirectly by adding to its prosperity in developing its natural resources, &c.

3. Of public corporations are those for building bridges, turnpikes, railroads and the like.

4. The results to be produced to the public by public corporations cannot be disturbed by the seizure by creditors of any part of the property essential to their active operations.

5. Debts against such corporations must be recovered by sequestration, allowing them to progress with their undertaking to accommodate the public.

6. A corporation for introducing water into a town for the accommodation of the inhabitants is a public corporation, and its buildings, &c., necessary for carrying on its operations are not subject to a mechanic's lien.

November 18th 1868. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the District Court of *Allegheny county:* No. 83, to October and November Term 1867.

This was an execution attachment by S. S. Fowler & Co. against Joseph L. Lowry, issued and served on the garnishees May 10th 1866. The Monongahela Water Company were garnishees. The water company was incorporated by virtue of an act approved the 21st of April 1855 (Pamph. L. 577), for the purpose of raising and introducing into the boroughs of Birmingham, East Birmingham and South Pittsburg a supply of water from the Monongahela river, for the use of the inhabitants of those boroughs. For this purpose the company were authorized to provide, erect, &c., all necessary buildings, works, machinery, &c., and convey water from the river by pipes or otherwise, through public or private grounds, &c., to the reservoir, and to distribute the water for the use of the inhabitants of the boroughs, with authority to enter upon, dig and lay pipes on lands, &c., and to appropriate land for their buildings, reservoirs, &c., first making compensation or tendering security. The act further provides that on certain conditions mentioned, the waterworks may become the property of either or all of the three boroughs.

On the 2d of December 1864, the company entered into a contract with Lowry, by which he agreed to furnish them with a pumping-engine, boilers, &c., for which they were to pay him $19,500.

To November Term 1864, S. S. Fowler & Co. recovered against Lowry the judgment on which this attachment-execution was

issued.   On the 6th of June 1866, Foster & Co. filed a mechanic's lien for $6396.26 against The Monongahela Water Company, owner, and J. L. Lowry, contractor, "against all that certain brick engine-house, situate, &c., containing a pumping-engine and lots or pieces of ground and curtilage appurtenant to the said building," &c.   The building, &c., were part of the waterworks of the company, erected under their charter, and the engine, &c., were the same furnished by Lowry under his contract.

In answer to interrogatories, the company said:—" That there was such a contract upon the 10th day of May 1866, between said garnishee and the defendant, and the annexed paper, marked 'A,' is a true copy of the same.   The garnishee paid to Joseph L. Lowry, on this contract, at different times before the service of this attachment, the sum of $11,300.

"Upon the 18th day of May 1866, we received a written notice from Joseph L. Lowry that, upon the 19th day of December 1865, he had assigned all his interest in said contract to his brother, David Lowry.   The annexed paper, marked 'B,' is a true copy of this notice.   We have been informed that the firm of Foster & Co., of the city of Pittsburg, have filed a mechanics' lien against the engine and fixtures mentioned in said contract, for money they claimed to be owing them for materials and labor, &c., in building and constructing the same.   Said lien amounting to the sum of $6396.26."

Foster & Co. were thereupon ruled to interplead; they filed a plea setting out their mechanic's lien.

The issues tried were between Fowler & Co. as plaintiffs, J. L. Lowry defendant, the Monongahela Company garnishee; David Lowry claiming to be the assignee of Lowry the defendant, of his claim against the water company, and Foster & Co. claimants under their mechanic's lien.

On the trial before Hampton, P. J., Foster & Co. offered the record of their mechanic's lien, which was objected to on the ground that a mechanic's lien did not lie against the property mentioned in the claim.

The court overruled the offer, and sealed a bill of exceptions.

There was evidence on the subject of the assignment to David Lowry.

Under the instructions of the court the jury found : "that the garnishees have in their hands the sum admitted in the answer to be due Joseph L. Lowry, on their contract with him, subject to a credit for money paid him prior to the service of the attachment; and that of such amount in their hands as aforesaid, there is sufficient to pay and discharge the plaintiffs' claim in this case, debt and interest, viz., the sum of $2327.72, with costs of original judgment.

" Also that no valid assignment has been made by the defendant, Joseph L. Lowry, of the debt due him by the garnishees.

[Foster *v.* Fowler.]

" Also that the defendants, Foster & Co., have no lien on the property of the garnishees."

Foster & Co. took a writ of error, and assigned for error the rejection of their offer of evidence.

*C. B. M. Smith*, for plaintiffs in error.—The operation of the Mechanics' Lien Law of June 16th 1836, Pamph. L. 696, Purd. 708 *et seq.*, is very broad, applying to *all* buildings. Those cases which the decisions have held to be excepted were decided on reasons not applicable to this case: Wilson *v.* Huntingdon Co., 7 W. & S. 197, county public buildings; Williams *v.* Controllers, 6 Harris 275, public-school house. A church is subject to a mechanics' lien: Church *v.* Allison, 10 Barr 413. This company is not a public corporation, and its property is liable to execution: Act of June 16th 1836, § 72, Pamph. L. 774, Purd. 199, pl. 37; Turnpike Co. *v.* Wallace, 8 Watts 316; McIlvaine *v.* Hestonville and Mantua Railroad, Leg. Int. Feb. 7th 1862; Plymouth Railroad *v.* Colwell, 3 Wright 337.

*D. W. & A. S. Bell*, for J. L. Lowry.—The reason why a lien cannot be enforced against such buildings is, that a loss would be sustained by the public: Susquehanna Canal Co. *v.* Bonham, 9 W. & S. 28; Steiner's Appeal, 3 Casey 315.

*H. Burgwin*, for Fowler & Co., defendants in error.

The opinion of the court was delivered, January 4th 1869, by

THOMPSON, C. J.—This was a case of an attachment-execution, issued by Fowler & Co. against Joseph L. Lowry, and served on the Monongahela Water Company, an alleged debtor of Lowry, as garnishee. There was an interpleader issue ordered by the court between the plaintiffs and defendants in error, and another party, to try who was entitled to the money due by the company to Lowry. Fowler & Co. claimed it by virtue of the service of an execution-attachment on the 10th of May 1866; Foster & Co., by virtue of a mechanics' lien against the company filed June 6th 1866, for materials furnished Lowry, the contractor of the company, for building a pumping-engine; and David Lowry claimed it under an alleged assignment by Joseph L. Lowry of all interest in his contract with the company, dated the 19th of December 1865. The jury found against the validity of the assignment on the facts, and also against Foster & Co., on the charge of the court that the mechanics' lien filed by them was not operative against the company, and in favor of Fowler & Co., and that the sum of $2327.72 remained due the defendant, Joseph L. Lowry, by the company, applicable to their writ. The case here, however, is exclusively between the plaintiffs and defendants in error, and

[Foster *v.* Fowler.]

turns upon the question whether a mechanic's lien is valid in law against property essential to the operations of the company. We are assuming nothing in stating the proposition thus, for undoubtedly the pumping-engine and engine-house of the company, would be absolutely necessary to raise water to the company's reservoirs, in order to supply the districts intended to be supplied with water. It was to these the lien, if any, attached—to property vital to the objects of the corporation, and which, if it might be deprived of by execution on such a lien, would stop or suspend the operation of the works altogether, to the great deterioration, and perhaps destruction of the stock, to the injury of the inhabitants relying on the works for water; and to the company, by rendering the balance of the works worthless. The question is, therefore, a grave one, whether the mechanic's lien, in a case precisely of this nature, is a remedy to secure a material-man; because if it be clearly so, we need not vex ourselves with contemplating embarrassing consequences; the law injures no one, even if such consequences follow its provisions.

In the able argument of the learned counsel of the plaintiffs in error, it was claimed that we should consider the question of lien without reference to its possible enforcement. This would be too abstract and unpractical; for the lien abstractly is nothing—its consequences or results, everything. The fruits of a lien are what the plaintiffs in error are contending for. We cannot, therefore, look at the question of lien, without reference to the legal consequences of it; and if they would necessarily contravene settled principles, it is evident that such an effect should not be given, and was not intended by the law; and if it be incapable of the practical results assigned by law to it, it is inoperative, is no lien. We must, therefore, regard the consequences of holding the claim filed to be a lien, one of which, and the principal one, is, that by virtue of it, the property bound by it would be subject to a sale on a *levari facias*, and then would follow the depreciation of the stock, the inconvenience to the public, and injury to the remaining property of the company, already referred to. We do not agree with the learned counsel, therefore, that in considering the question of lien we ought to ignore the possibility of its enforcement. The entry of the claim is parcel of a legal remedy, the whole of which remedy it is necessary to consider in order to determine whether it is a proper remedy, in any given case.

Most people acquainted at all with corporate action, understand that corporations, other than municipal, which are purely public, naturally divide into public and private corporations; that is, into those that are agencies of the public directly affecting it, and those which only affect it indirectly, by adding to its prosperity in developing its natural resources, or in improving its

mental or moral qualities. Of the former, are corporations for the building of bridges, turnpike roads, railroads, canals, and the like. The public is directly interested in the results to be produced by such corporations, in the facilities afforded to travel and the movements of trade and commerce. It is well settled that this use is not to be disturbed by the seizure of any part of their property essential to their active operations, by creditors. They must recover their debts by sequestering their earnings, allowing them to progress with their undertaking, to accommodate the public. This direct benefit to, and accommodation of the public, very clearly distinguish this class of corporations from the second class, viz.: private corporations, or those in which the public is but indirectly interested, such as mining and manufacturing, or coal and iron companies, &c., or libraries, literary societies, schools, and the like. Whether they progress or cease, the public is not directly affected, and hence liens are enforceable against them without, as a general thing, any regard to the effect upon their operations. How this is to be done in given cases is in no way germane to the subject of this opinion, and need not be further noticed.

We make the classification referred to in order the more readily to determine to which the corporation in question properly belongs. That the legislature regarded it in the light of a public corporation as above defined, we think will be apparent from a very slight analysis of the objects of its creation and its powers.

By the 7th section of the act of incorporation, we learn that the object in view, and to be accomplished by the company, was the introduction into the boroughs of Birmingham, East Birmingham and South Pittsburg, of a sufficient supply of Monongahela river water, for the use of the inhabitants of those boroughs, and for the supply of hydrants and fire-plugs, for the extinguishment of fires accidentally occurring therein.

The corporators were to do this under their charter, in preference to, and instead of, the boroughs in their corporate capacities, and to enable them to accomplish the enterprise effectually they were, as a company, invested by the act with the right of eminent domain, for the acquisition of necessary and suitable grounds for the erection of buildings and sites for reservoirs, and with the right and privilege of entering upon the lands of private owners, to dig and lay down water-pipes or mains therein, and to enter thereon at all times to repair or renew the same. The company was also authorized to borrow money in order to accomplish the work, and to mortgage or pledge the property and effects of the corporation for its repayment. A provision is also contained in the charter for the eventual transfer of the works to the municipal corporations above mentioned. It is thus not only a public cor-

[Foster *v.* Fowler.]

poration in its powers and purposes, but is subject to become municipal property.

It will hardly be disputed that the operations of this corporation were to supply not a convenience only, but a matter of prime necessity directly to the public, and to be regarded as directly affecting the public. It is, in this aspect, as important to the public as are convenient roads and highways, which, when constructed by companies, are always regarded as the works of public corporations. That this is the light in which such an undertaking as this is to be regarded, we have the authority of this court. In The Borough of Harrisburg *v.* Crangle, 3 W. & S. 461, the right of eminent domain conferred on the borough authorities, along with the power granted to erect waterworks by the Act of 26th March 1839, was fully and unhesitatingly affirmed by this court, and to it we refer. The fact that the power was conferred on the borough authorities to engage in an enterprise confessedly not within the scope of their municipal powers, placed them in the category of private adventurers, and thus the decision stands as authority, that the purpose was a public one, and authorized the grant of eminent domain to it; and if so in that case, it is in this.

It is something, also, that the legislature regarded this as a public corporation by giving it the power of eminent domain. Still, if it were not essentially so in its nature, the power would not make it so. The power itself would fall. Private property cannot be taken on any terms by legislative authority for private purposes. This is effectually prohibited by the 10th section of article I. of the Constitution of the United States. But we think the power was properly conceded to the purpose in this case, it being public in its nature and design.

Regarding the corporation of the Monongahela Water Company, therefore, as a public corporation, it stands on the principles announced in Ammant *v.* The Turnpike Co., 13 S. & R. 210; The Turnpike Co. *v.* Wallace, 8 Watts 316; and The Susquehanna Canal Co. *v.* Bonham, 3 W. & S. 27. In this last case, Sergeant, J., said "the privileges granted to corporations to construct turnpike roads, canals, &c., are conferred with a view to the public use and accommodation, and they cannot voluntarily deprive themselves of the lands and real estate, and franchises which are necessary for that purpose; nor can they be taken from them by execution and sold by a creditor, because to permit it would defeat the whole object of the charter, by taking the improvements out of the hands of the corporation and destroying their use and benefit."

As a mechanic's lien is the foundation for process of sale, we should yield the principle thus clearly stated, by holding it applicable to erections of works of the description we are considering,

[*Foster v. Fowler.*]

having settled its object and use to be public. We think the remark of Lowrie, J., in Williams *v*. The Controllers, 6 Harris 275, is in point here, " that where there can be no execution, there can be no action;" and that is as true in this case, if we are right in the character we have assigned to this corporation, as it was in that.

We are thus carried to the conclusion that the mechanic's claim filed in this case was no lien, and that the court below was right in so holding. This may operate hardly on the plaintiffs in error, unless they have a remedy against the company, which they undoubtedly have, if they can establish their claim as a debt against it; the hardship of the case, however afflicting it may be, must not be permitted to attract us away from principles well settled, and of the utmost importance to the public generally. We must, therefore, affirm this judgment.

Judgment affirmed.