# Girard Point Storage Company *versus* Southwark Foundry ·Company.

1. A company incorporated to transact a general storage and elevator business, including the right to issue warehouse receipts, advance money, &c., is not a public corporation, and its real estate used in the exercise of its franchise is not exempt from mechanics' liens.

2. Where materials are furnished to one or more of several buildings upon a large tract of land used together in the general business of a private corporation, a mechanics' lien may be filed against the particular building or buildings only to which the materials were supplied, and the lots and curtilages appurtenant thereto.

February 1, 1884.    Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas, No. 4, of *Philadelphia County :* Of January Term, 1884, Nos. 65 and 66.

Two mechanics' claims were filed by the Southwark Foundry and Machine Company against the Girard Point Storage Company, owner, and Malster & Reany, contractors, for work and materials, to wit, steam engines, furnished to grain elevators A and B, erected on the property of the Girard Point Storage Company in the city of Philadelphia.    A lien was claimed on the said buildings and the pier, and lots on which the same were constructed, respectively, and curtilage, &c., as described in the claim, being portions of the entire tract and buildings owned and used by said company.

The defendant company filed the following affidavit of defence in each case :

"Said company was incorporated on the 21st of February, 1881, 'to elevate, store, handle, and transfer grain; to do a general storage business in all kinds of merchandise ; to transfer ·merchandise from vessels to cars and from cars to vessels, and to construct or otherwise provide elevators, wharves, warehouses, docks, telegraph lines, railway tracks,

locomotives, cars, lighters, tugs, and such other appliances as it may deem necessary or desirable for the transaction of its business ; to issue elevator, storage and warehouse receipts; to advance money thereon and to acquire, hold, and convey such real and personal estate as is or may be necessary for the purpose of its organization, and for all such purposes to be vested with all powers granted by the Act of April 29, 1874, providing for the incorporation and regulation of certain corporations and the several supplements,' as is specifically set forth in Pamphlet Laws of 1881, 230.

"Deponent saith that the ground described in said claims is a part of a large piece comprising one hundred and thirty acres acquired by said corporation for the execution of its franchise, and that the buildings referred to in said claim with others were erected on said ground as an integral part of the corporate property, without which the franchise could not be successfully maintained, and for that reason neither is subject to the lien of the claims hereinbefore referred to. Said premises described in said claim, and the ground and buildings as to which the franchises apply and which are one and inseparable with regard to it, can be better made manifest by a plan of the same to be exhibited on the trial hereof."

The plaintiff took in each case a rule to show cause why jugdment should not be entered for want of a sufficient affidavit of defence, which rules the court, in an opinion by THAYER, P. J., made absolute, whereupon the defendant took these writs of error, assigning for error the entry of judgment for claimants for want of sufficient affidavits of defence.

*David W. Sellers,* for the plaintiffs in error.—This corporation is vested with a franchise in which the public have concern, hence any building necessary for the execution of said franchise, is not subject to a mechanics' claim. The corporate functions compose an unity. It is all incidental to public transportation by land and by water. Grain comes over its railway tracks from the distant west, and is unloaded into the elevator buildings and thence by ships to Liverpool. This was considered by the Supreme Court of the United States a matter of such public concern that even where the elevator was individually owned, the public had a right to control and regulate the use: Munn *v.* Illinois, 4 Otto, 113 ; Canal Co. *v.* Bonham, 9 W. & S., 27 ; Bank *v.* Man'f'g Co., 13 W. N. C., 175; Williams *v.* Controllers, 18 Pa. St., 277 ; R. R. Co. *v.* City, 88 Pa. St., 424; Foster *v.* Fowler, 60 Pa. St., 27; McIlvain *v.* R. R. Co., 5 Phila., 13. If, however, this is a private corporation, and otherwise subject to a lien, a levy and sale of parts of the property affecting the essential integrity of it as a

whole could not be allowed, as it would be to depreciate the value of the whole. As a sale under the lien would disintegrate a property which is averred in the affidavit of defence to be essentially a unit, the fruits of the lien cannot be realized, and the lien itself must fall : Foster *v.* Fowler, 60 Pa. St., 27.

*C. E. Morgan, Jr.*, (with him *F. D. Lewis*,) for the defendant in error.

Mr. Justice GORDON delivered the opinion of the court, February 26, 1884.

The plaintiffs below, defendants in error, on the 16th of March, 1883, filed two several claims under the Mechanics' Lien Act, for the price of certain work and materials furnished to the contractors of the Girard Point Storage Co., to be used for and about the erection and equipment of two of its storehouses, or grain elevators, situated near Girard Point, in the city of Philadelphia, known as elevators A. and B. About the accuracy of the description of the buildings and the appurtenant curtilages there seems to be no dispute ; the ground on which the defendant resists this claim of the plaintiffs, appears in the affidavit of defence to the scire facias issued upon the said claim, and which the court below adjudged to be insufficient, and thereupon entered judgment for the plaintiffs. The following copy exhibits the material part of that affidavit: "Said company was incorporated on the 21st of February, 1881, 'to elevate, store, handle, and transfer grain ; to do a general storage business in all kinds of merchandise ; to transfer merchandise from vessels to cars, and from cars to vessels, and to construct or otherwise provide elevators, wharves, warehouses, docks, telegraph lines, railway tracks, locomotives, cars, lighters, tugs, and such other appliances as it may deem necessary or desirable for the transaction of its business ; to issue elevator, storage and warehouse receipts ; to advance money thereon, and to acquire, hold and convey such real and personal estate as is or may be necessary for the purpose of its organization, and for all such purposes to be vested with all the powers granted by the Act of April 29, 1874, providing for the incorporation and regulation of certain corporations and the several supplements,' as is specifically set forth in pamphlet laws of 1881, 230. Deponent saith that the ground described in said claims is part of a larger piece comprising one hundred and thirty acres acquired by the said corporation for the execution of its franchise, and that the buildings referred to in said claim with others were erected on said ground as an integral part of the corporate property, without which the corporate franchise could not be successfully maintained, and

for that reason neither is subject to the lien of the claims herein before referred to."

From the facts here stated it is argued that the Girard Point Storage Company is in the nature of a public corporation, and that the general public has such an interest in its works as to protect it from the encumbrance of a mechanic's lien. It cannot be denied but that if this corporation bears the character here claimed for it, it cannot be thus disturbed. The material question then is, what rights have the public in and upon this property other than what it would have did that property belong to a private individual or to an unincorporated partnership? We understand very clearly and distinctly the relation of a turnpike road, canal, and railroad to the public. The people of the Commonwealth have the right of way over them, which right, when occasion requires, may be exercised regardless of the will of the corporations owning them. They are highways, and the companies operating them have the right of eminent domain conferred upon them only because of this direct interest which the public has in these methods of transit. But in the works of the corporation defendant the community at large has no other or further interest than it has in the storehouses of private individuals. It may receive the grain of one person and refuse that of another, or it may, at its own will, suspend operations and shut out the public altogether. Its organization is all that it has received from the public, beyond this the public has no special interest in it, and when this organization disappears there is nothing left of a public character, or anything over which the Commonwealth has control. Very different is the case of a turnpike, a canal or railroad, which remains for the common use after the corporation which built it is dissolved, and which the State may take possession of for the public welfare. Mr. Chief Justice THOMPSON, in the case of Foster v. Fowler, 10 P. F. S., 27, has shown very clearly the distinction between those corporations in which the public is directly interested, and those in which it has only an indirect interest; among the latter he mentions manufacturing, coal and iron companies, and he adds, that as against such as these liens are enforceable. But we cannot understand why a company organized for the shifting and storage of grain should occupy, in this respect, a position superior to those thus mentioned. All are alike established for private purposes, and by them the public is at best but incidentally benefited. If, however, the property and buildings, of every person and association whose trade or business in any degree advanced the common welfare, were exempt from the ordinary forms of lien and execution, the collection of debts would soon become so tedious and expensive that,

in most instances, their abandonment would be the better policy.

Nor can we understand how the case of Munn *v.* Illinois, 4 Otto, 113, can affect the case in hand. The question there involved not the rights of a corporation but those of a private person, and the principle involved in the ruling of the Supreme Court of the United States was that where the owner of such property as a warehouse, devotes it to a use in which the public has an interest, he, in effect, grants to the public an interest in such use, and must, therefore, to the extent thereof, submit to be controlled by the public for the common good as long as he maintains that use, but he may, at any time, withdraw this implied grant by discontinuing the business from which it arises. But it certainly does not follow that because of this public interest, the property of a private person is made public property, or even quasi public property, or that it is therefore exempted from ordinary execution process.

But the learned counsel for the defendant further contends, that if this property is at all subject to a mechanic's lien, the claim should have been filed against the entire property, and should not have been confined to the particular buildings for which the work and materials were furnished. This, however, is not the view taken of the mechanic's lien law by this court, as will appear by reference to the cases of Nelson *v.* Campbell, 4 Casey, 156, and Parrish and Hazzard's App., 2 Norr., 111. Nor do we believe that a lien so general in its character as to embrace many separate buildings and a hundred and thirty acres of ground, could be sustained. If it is in fact true, that all this is but the proper curtilage of the buildings against which the lien is filed, then will that lien cover it. But a question of this kind cannot be tried on the scire facias, it is rather determinable by commissioners who, for that purpose, may be appointed by the court below before a sale of the premises.

The judgments are affirmed.