## T. J. Reynolds v. Reynolds Lumber Company.    Appeal of James Roy, Sheriff.

*Corporations—Execution—Fieri facias—Act of April 7, 1870.*

If a corporation is purely private, and the public has no direct interest in its operations, or rights concerning them, its property, however useful and necessary for the conduct of its business, may be sold under an ordinary writ of fieri facias in the same manner as the property of an individual ; and in such case the plaintiff in the execution is entitled to the fund raised by the sale, to the exclusion of general creditors. Neither Hopkins and Johnson's Appeal, 90 Pa. 69, nor Bank v. Coke Co., 137 Pa. 601, are in conflict with this principle.

Distinction shown between Foster v. Fowler, 60 Pa. 27, and Guest v. Water Co., 142 Pa. 610, on the one hand, and Girard Point Storage Co. v. Southwark Founding Co., 105 Pa. 248, and McLeod v. Central Normal School, 152 Pa. 575, on the other.

Argued May 6, 1895. Appeal, No. 113, Jan. T., 1895, by James Roy, sheriff, from order of C. P. Warren Co., June T., 1893, No. 90, directing sheriff to pay money into court. Before STERRETT, C. J., WILLIAMS, MCCOLLUM, DEAN and FELL, JJ. Reversed.

Rule on sheriff to pay money into court.

From the record it appeared that T. J. Reynolds, a judgment

creditor of Reynolds Lumber Company, a purely private corporation, issued a writ of fieri facias under which the sheriff sold certain property of the company. The sheriff distributed the proceeds to the Warren Savings Bank, the assignee of the plaintiff in the execution. Nearly a year after this distribution was made a rule was taken by certain judgment creditors of the corporation on the sheriff to pay the money into court, so that the fund should be distributed pro rata amongst all the creditors. The other material facts will be found in the opinion of the Supreme Court. The court, in an opinion by MORRISON, P. J., specially presiding, made the rule absolute.

*Error assigned* was above order.

*D. I. Ball, C. C. Thompson* with him, for appellant.—The Reynolds Lumber Company was a private corporation, and its property was the subject of levy and lien upon execution and attachment, and the proceeds of the sale thereof are distributable in the order of lien and not pro rata among all creditors: Foster v. Fowler, 60 Pa. 30; Girard Storage Co. v. Southwark, 105 Pa. 248; McLeod v. Normal School, 152 Pa. 575; Schuylkill Co. v. Citizens' Gas Co., 148 Pa. 162; Bank of Titusville v. Gibbs & Sheriff Manf. Co., 13 W. N. C. 174; Fairmount Coal & Iron Co.'s App., 14 W. N. C. 214; Philadelphia & Reading R. R. Co.'s App., 2 Cent. Rep. 778; Flagg v. Farnsworth, 12 W. N. C. 500; Prouty v. Prouty, 155 Pa. 112; Fire Ins. Patrol v. Boyd, 44 Leg. Int. 252; Boyd's App., 15 Atl. Rep. 736; Dana v. Bank of United States, 5 W. & S. 247; Lowry v. Phila. Watch Co., 161 Pa. 123.

Any surplus of the fund to which the lien creditors are not entitled is payable to the defendant in the execution.

General creditors have no right to question the distribution of or to participate in the fund: Smith v. Reiff, 20 Pa. 364; Artman v. Giles, 155 Pa. 410; Kelly v. Herb, 157 Pa. 41, Green v. Tyler & Co., 39 Pa. 364; Rudy's App., 94 Pa. 338.

Since the claim of the Warren Savings Bank upon the attachment is superior to any other claim, except the prior execution, and large enough to take all the fund, it is immaterial to other creditors whether the amount was applied upon the execution of Reynolds or upon the attachment of the banks: Wilcocks v.

Waln, 10 S. & R. 379; Mfg. Bank v. Bank, 7 W. & S. 335; Tomb's App., 9 Pa. 61; Loucheim Bros. App., 67 Pa. 49; Thomas's App., 69 Pa. 120; Modes's Est., 76 Pa. 502.

The money having been paid to the bank under a claim of right, and upon an execution which had not been assailed, cannot be recovered back: First Nat. Bank v. Fair, 127 Pa. 324; Federal Ins. Co. v. Robinson, 82 Pa. 359; Herring v. Adams, 5 W. & S. 461; Mann's App., 1 Pa. 29; Boas v. Updegrove, 5 Pa. 516.

The money having been paid over to the party apparently entitled to it under the process in his hands, the sheriff cannot be compelled to pay it into court: In re Bastian, 90 Pa. 472; Franklin Twp. v. Osler, 91 Pa. 160.

*W. W. Wilbur* of *Wilbur & Schnur*, and *Samuel T. Neill*, *W. B. Chapman*, *Perry D. Clark* and *Leon G. Ball* with them, for appellees.—The fund should be distributed pro rata: Loudenschlager v. Benton, 3 Gr. 384; Lusk's App., 108 Pa. 157.

It is conceded by all that the property sold was essential to the carrying on of the business, and that it was all personal property.  This state of facts requires a pro rata distribution: Bayard's App., 72 Pa. 453; Hopkins' App., 90 Pa. 69; Hogg's App., 88 Pa. 195; First Nat. Bank v. Coke Co., 137 Pa. 601; McKee v. McKee's Rocks Oil Co., 41 Pitts. L. J. 59.

OPINION BY MR. JUSTICE FELL, July 18, 1895:

This appeal is by James Roy, sheriff of Warren county, from an order of the court of common pleas directing him to pay into court certain moneys, the proceeds of an execution against the Reynolds Lumber Company.  Nearly a year before the order was made the sheriff had paid the money in question to the Warren Savings Bank, the assignee of the plaintiff in the execution.  This payment was made after the return day of the writ of execution, at a time when no rule was pending, and before the claim of the appellees had matured.  Rules to show cause why the money should not be paid into court granted on the application of other creditors were discharged, and it appears from the record that the payment was made by the sheriff in the due course of a regular and orderly proceeding without notice of the appellee's claim.  The payment was proper and

relieved the sheriff of all responsibility unless the fund belonged to all the creditors, in which case it would have been his duty to pay it into court for a pro rata distribution among them. The learned judge of the common pleas, specially presiding, reached the conclusion that the plaintiff in the execution secured no preference by the levy under his writ, and that all the creditors of the defendant were entitled to participate in the distribution, and it is upon this view of the law that the order is based.

It would doubtless be more equitable if the property of insolvent debtors should be distributed among all the creditors in proportion to their claims, but it has not been the policy of the law in this state to forbid a preference, nor to prevent the vigilant creditor from acquiring a lien by levy upon personal property. There seems to be no ground for a distinction in respect to the distribution of the proceeds of a sale by execution of the property of an individual and that of a corporation which may be sold separate from its franchises. The special writ of fieri facias provided by the act of April 7, 1870, is by its terms in addition to and in lieu of the proceeding by sequestration given by the act of June 16, 1836. In the appeal of the Phila. & Baltimore Central R. R. Co., 70 Pa. 355, it was held that the remedies by sequestration and execution could not coexist, and that the later act took the place of the former to the extent of superseding the writ of sequestration. The rule as to distribution, however, remains undisturbed : Bayard's Appeal, 72 Pa. 453. And the special writ given by the act of 1870 under which the property, rights and franchises of a corporation can be sold, can issue only after the personal property subject to the ordinary process of execution has been exhausted, and there has been a return of the writ. In the opinion in Guest v. Water Co., 142 Pa. 610, it is said by McCollum, J., "The fieri facias allowed by this act (1870) is not a substitute for the ordinary fieri facias under the seventy-second section of the act of June 16, 1836, but is in lieu of sequestration under the seventy-third section. The process and procedure provided by the seventy-second section remain, and the process provided by the seventy-third section is superseded by the special fieri facias given by the act of 1870. The condition precedent to sequestration was an ordinary fieri facias

returned unsatisfied in whole or in part, and this must precede the writ which takes its place. By this precedent return on the ordinary fieri facias the insolvency of the corporation is discovered and the necessity of recourse to a sale for the benefit of its creditors of its franchises and property essential to its operation is demonstrated."

There has been no conflict in the decisions upon this subject. Hopkins and Johnson's Appeal, 90 Pa. 69, while apparently not in line with the cases, decides no question touching the distribution by law of the proceeds of the sale of corporate property. It arose under irregular and anomalous proceedings before a master who by agreement of the parties in interest was to determine the validity of certain judgments and award distribution as if the fund was held in trust for creditors. The judgments in question were found to be invalid, and distribution was made in accordance with the agreement, preference being given to creditors having valid liens. No question affecting the rights of creditors in distribution outside of the agreement was decided, or considered, and the statement in the opinion that the sale was for the benefit of all the creditors was evidently based upon the supposition that the franchises had been sold under the act of 1870, and it is misleading because misapplied. In the per curiam opinion in Bank v. Coke Co., 137 Pa. 601, Chief Justice PAXSON was speaking of the effect of a sale under the special writ which had been issued in that case.

When the operations of a corporation are matters of direct public interest and concern, its property reasonably essential to the exercise of its franchises is stamped with the character of a public trust. It cannot be aliened by the corporation, nor sold by its creditors piecemeal so as to stop its operations and defeat the object of its charter. Before the act of 1870 such property could not be taken in execution in this state. The sequestration proceedings of the act of 1836 were suggested by Chief Justice TILGHMAN in the opinion in Ammant v. New Alexandria & Pittsburg Turnpike Co., 13 S. & R. 210, and after the passage of that act it was held in Susquehanna Canal Co. v. Bonham, 9 W. & S. 27, that the franchises and corporate rights of a canal company and its property necessary to their exercise were incapable of being transferred or granted away

by any act of the company itself or by any adverse process against it, and that sequestration was the only remedy consistent with the preservation of the public interests. The act of 1870 provides a remedy by which the rights of creditors can be enforced without prejudice to the public interest, by the sale together of the franchises and the property necessary to their exercise.

When however the business of a corporation is purely private and the public has no direct interest in it, its property may be sold without regard to the effect upon its operations. Judge THOMPSON in the opinion in Foster v. Fowler, 60 Pa. 27, referring to the distinction between corporations which are agencies of the public and directly affect it, and those which affect it only indirectly by adding to its prosperity, said: " Of the former are corporations for the building of bridges, turnpike roads, canals and the like. The public is directly interested in the results to be produced by such corporations, in the facilities afforded to travel and the movements of trade and commerce. It is well settled that this use is not to be disturbed by the seizure of any part of their property essential to their active operations, by creditors. They must recover their debts by sequestering their earnings, allowing them to progress with their undertaking to accommodate the public. This direct benefit to and accommodation of the public very clearly distinguish this class of corporations from the second class, viz: private corporations, or those in which the public is but indirectly interested, such as mining and manufacturing or coal and iron companies, etc., or libraries, literary societies, schools, and the like. Whether they progress or cease the public is not directly affected, and hence liens are enforceable against them without, as a general thing, any regard to the effect upon their operations."

In the case above referred to it was held that a mechanic's lien could not be enforced against a water company, and this ruling was followed in Guest v. Water Co., 142 Pa. 610, while in The Girard Point Storage Co. v. Southwark Founding Co., 105 Pa. 248, and in McLeod v. Central Normal School, 152 Pa. 575, it was decided that mechanics' liens could be maintained, as the defendants were not quasi-public corporations.

The reason for the exemption of any of the property of a

corporation from levy and sale by an execution creditor is that the interests of the public are involved. The exemption does not extend in any case to property not reasonably essential to the exercise of the franchises. If the charter is for a purpose in which the public is directly interested, and the grant is for a use which the public may assert and enforce as a right, the property of a corporation necessary for its operation in carrying out its public purpose cannot be sold except with its franchises under the special writ provided by the act of 1870. If however the corporation is purely private and the public has no direct interest in its operations or rights concerning them, its property although useful and necessary to the conduct of its business, may be sold under an ordinary writ of fieri facias in the same manner as the property of an individual.

The Reynolds Lumber Co., the defendant in the execution, is a private corporation, chartered in West Virginia and doing business in New York and Pennsylvania. Its charter confers upon it the bare right of corporate existence. It performed no public functions whatever. No public trust was committed to it or imposed upon its property, and the public had no interest in its operations and no rights connected therewith. Its business was of a private character and such as might have been and usually is carried on by individuals. Its property, which was sold under the ordinary writ of fieri facias, consisted of timber, lumber, merchandise, horses and personal goods and chattels. A part of this property was manufactured for the purpose of sale and the rest was used as a means of conducting its ordinary business, and all of it could have been sold by the corporation.

As the property sold by the sheriff was subject to seizure and sale under the ordinary writ of fieri facias and was so sold by him, the fund realized was properly paid to the assignee of the plaintiff in the execution. The order of the court of common pleas of October 25th, 1894, directing the sheriff to pay the money into court, is reversed and set aside at the cost of the appellee.