# City of Decatur *v.* Southern Railway Co.

*Bill to Enjoin Municipal Ordinance.*

(Decided June 12, 1913.   62 South. 855.)

1. *Appeal and Error; Questions Presented.*—Where the court over-ruled a demurrer to the complaint on a specific ground, but did not decree as to other grounds, this court on appeal will only review the rulings on the grounds specified, notwithstanding the intimation by the court that some of the other grounds were well taken.

2. *Municipal Corporations; Special Assessment; Railroad Property; Sale.*—An assessment for street improvement against a small portion of the right of way of a railroad company, engaged in the discharge of its functions as public service corporation, as a going concern, cannot be enforced by a sale of that portion of the right of way.

APPEAL from Morgan Law and Equity Court.

Heard before the Hon THOMAS W. WERT.

Bill by the Southern Railway Company against the City of Decatur to enjoin the enforcement of a municipal ordinance to enforce the sale of a portion of the right of way. From a decree overruling demurrers to the bill respondents appeal. Affirmed.

CALLAHAN & HARRIS, for appellant. Under the allegations of the bill the assessment sought was of a benefit to the abutting property regardless of what its uses may be.—*Ala. R. R. Co. v. Barbour,* 197 U. S. 434. The city council has adjudicated that the property involved was benefited by the improvement, and that that amount had been assessed against it, and in the absence of any showing by the bill to the contrary, it must be presumed that the proceedings were regular.—*City of Birmingham v. Will,* 59 South. 173; *City of Woodlawn v. Durham,* 50 South. 356; Page & Jones Special Assessments, sec. 933. While it may be conceded that the

policy of the State is not to sell under judicial process, the part of rights of way of a railroad, the legislature can and has changed that policy.—Sec.1370, Code 1907; 77 Am. St. Rep. 711; 120 Ill. 104; Elliott on Railroads, sec. 786; 91 Pac. 244; 28 Cyc. 1118; 12 L. R. A. (N. S.) 112; 10 Ohio State 159; 147 U. S. 202; 34 L. R. A. 564, and authorities supra.

WERT & LYNNE, for appellee. No brief reached the Reporter.

MAYFIELD, J.—Appellee railroad company, filed this bill against the City of Decatur, and some of its officers, to enjoin the enforcement of a certain municipal ordinance, by which the city proposed to sell, and was proceeding to sell, a portion of the railroad's right of way, for the purpose of enforcing the payment of an assessment against the right of way for the opening and improvement of a street of the city which is adjacent to or abutting the railroad right of way. The city demurred to the bill, and the trial court overruled the demurrer. The court, in a short opinion accompanying the decree, states that the demurrer was overruled on the ground that it was against public policy to sell or expose for public sale the right of way of a railroad, whilst it was the property of a public service corporation, engaged in the business of a common carrier; that its right of way for this reason and purpose was a public highway. Whether such quasi public property can be sold at judicial sale, to pay debts or demands due from the corporation, or whether such claims or demands constitute a charge or lien upon the right of way sought to be sold, is the sole question presented for decision on this appeal.

There were other grounds of demurrer, but the trial court did not decree as to them, but intimated that

some of the grounds were well taken.  For this reason we will review the chancellor's rulings only on the ground mentioned.

There is a plain and clear-cut conflict among the authorities as to whether or not the right of way of a railroad company is subject to local assessments, or betterment and improvement taxes.  Mr. Elliott, in a recent edition of his work on Railroads, speaks thus on the subject (volume 2 [2d Ed.] §786, pp. 197-200) : "There is a conflict in the adjudicated cases as to whether or not the right of way of a railroad company is subject to local assessments.  The question has been discussed in a great number of instances, and different conclusions reached in apparently similar cases.  The latest authorities on the subject, however, recognize what we believe to be the true rule, and that is that, where the right of way receives a benefit from the improvement for which the assessment is levied, and there is no statute exempting the railroad company from local assessments in clear and unequivocal terms, it is subject to assessment.  Some of the authorities hold that the making of a local improvement, such as a street, along or near a railway right of way cannot possibly be a benefit to the company; that it can run its trains as well without the improvement as with it, and therefore no assessment can be levied.  One court, addressing itself to this subject, has said:  'Where we can declare as a matter of law no such benefit can arise, the Legislature is powerless to impose such a burden. It would not be a tax in any proper sense of the term; it would be in the nature of a forced loan, and would practically amount to confiscation.'  Thus, where a street crosses a railway right of way at right angles, it has been held that no benefit accrues to the railway company from the improvement of the street, and that

no assessment can be levied. As where a railway company has a mere right of way across a lot to which it does not hold title, it cannot be assessed for the construction of an improvement adjoining the lot. In many of the cases in which it was held that the right of way could not be assessed, the improvement, to pay for which the assessment was sought to be levied, was a street, and it clearly appeared that no benefit resulted to the right of way, but where it clearly appears that a benefit results from the improvement, such as the benefit derived from the construction of a street drain, sewer, or the like, the levy of the assessment may be proper and valid. So it had been held that the fact that the only use made of a lot abutting on a street improvement is for a railroad right of way does not make an assessment thereon invalid on the alleged ground that there can be no benefit." If we concede the "true rule" to be as Mr. Elliott states it (which we do not, at present), still the crucial point in this case is not yet met, which is this: Can the assessment against a small portion of a railroad right of way be enforced in the ordinary mode, by a sale of that small portion so benefited by the assessment?

On this particular question Mr. Elliott says (idem, sec. 790) : " "While it is probably true that there may be a lien on the right of way of a railroad for local assessment, where such assessment is authorized by statute, the manner of enforcing such assessment is not clearly settled. The right of way of a railroad company is a part of the company's property, without which it could not perform the duties it owes to the public. To subject a portion of the right of way to a sale to enforce a local improvement would greatly embarrass, if not entirely destroy, the ability of the company to perform its public functions. The rights of the public are regarded

as superior to the rights of any individual, or group of individuals. Local assessments are usually levied on a small portion of a railway right of way, varying from a few feet in length to miles in length. To permit such portion to be sold would prevent the operation of the road, and, on grounds of public policy, it is held that the ordinary remedy of enforcing the collection of a local assessment by a sale of the property benefited does not apply to the enforcement of an assessment against the right of way of a railway company. While there is a conflict of authority on this subject, the decided weight is that the right of way, if sold to pay the assessment, must be sold as a whole, and not in broken fragments. 'The public have a right to have a railway remain an entirety, and it would be destructive to public interest to permit it to be broken up into disjointed and practically useless fragments.' Even if it be conceded that a personal judgment for the amount of the assessment can be rendered, still it does not follow that a railroad can be sold in fragments.'

While we have no case from this court exactly in point, what has been said on the subject of sales of a part of a railroad right of way clearly indicates that it has always been the opinion, if not the decision, of this court that such sales were unwarranted and against public policy. ,

In the case of *Eufaula Water Co. v. Addyston Pipe & Steel Co.*, 89 Ala. 552, 560, 8 South. 25, 27, which was a proceeding to enforce a materialman's lien for water pipes used by the water company, a public utility corporation engaged in supplying water to the city and inhabitants of Eufaula, this court, speaking through Mc-Clellan, J., said: "It may be that water companies, and the like, cannot have their public functions thus interfered with, by the enforcement of the lien of a ma-

terialman by a sale of any part of their property which is essential to the service of the public. Ordinarily the coercive process of the law should run against their property and franchises as an entirety, so that the public interests in them will be conserved. It may readily be conceived that the sale under judicial process of the buildings and machinery which constitute the pumping station of a water company, whose duty it is to supply water to a populous city for its people, for the suppression of fires, and for public sanitation and comfort, might result not only in individual inconvenience, but also in serious public danger and disaster. We expressly refrain, however, from more than a citation of some of the authorities on this point. —*East Ala. Railway Co. v. Visschler,* 114 U. S. 340 [5 Sup. Ct. 869, 29 L. Ed. 136] ;*Water Co. v. Hamilton,* 3 Am. & Eng. Corp. Cas. 421, note 425; *Gue v. Tide Water Canal Co.,* 24 How. 257 [16 L. Ed. 635] ; *Commissioners v. Tommey,* 115 U. S. 122, 5 Sup. Ct. 626, 11826, 29 L. Ed. 305; *Foster v. Fowler,* 60 Pa. 27; *McPheeters v. Merimac Bridge Co.,* 28 Mo. 465; *Graham v. Mt. Sterling Railway Co.,* 14 Bush (Ky.) 425, 29 Am. Rep. 412; *La Crosse & Mid. R. R. Co. v. Vanderpool* [11 Wis. 119] 78 Am. Dec. 691, note 697."

In the case of *Gardner et al. v. Mobile & N. W. R. R. Co.,* 102 Ala. 635, 15 South. 271, 48 Am. St. Rep. 84, which was a bill to set aside and annul a judicial sale of a portion of a railroad right of way, this court, speaking through STONE, C. J., said: "As a general rule, the property of all private corporations is as subject to legal process for the satisfaction of debt as is the property of natural persons. An exception obtains, however, when the corporation is created to serve public purposes charged with public duties, and is in the exercise of its franchise and in the performance of its

duties. Then, on considerations of public policy, without regard to the nature or quality of the estate or interest of the corporation, according to the weight of authority, such property as is necessary to enable it to discharge its duties to the public, and effectuate the objects of its incorporation, is not subject to execution at law. The only remedy of a judgment creditor is to obtain the appointment of a receiver, and the sequestration of its income or earnings.—1 Freeman on Executions, § 179, and authorities collected in notes; 2 Morawetz, Corp. § 1125; *Gue v. Tidewater Co.,* 24 How. 257 [16 L. Ed. 635]; *Overton Bridge Co. v. Means,* 33 Neb. 857 [51 N. W. 240], 29 Am. St. Rep. 514, and authorities cited." In the above case the sale was of the fee to the right of way, and it was upheld solely upon the ground that the railroad had ceased to be a going concern, or to discharge its public functions, and was a public service corporation only in name, long before the levy and sale. Further on in that same opinion it is said: "The question we have considered, the right to levy an execution at law, on lands owned and held in fee, as the right of way of a railroad corporation, the corporation having become inert and having ceased all user of its franchises and all performance of its public duties, was not considered in *East Ala. Railway Co. v. Visscher,* 114 U. S. 340 [5 Sup. Ct. 869, 29 L. Ed. 136]. All that was considered and decided in that case was whether the mere right of way of a railroad company, 'a mere easement in the land, to enable it to discharge its functions of making and maintaining a public highway, the fee of the soil remaining in the grantor," was the subject of levy and sale under execution at law. The court expressly declared that it was 'not necessary to discuss the general question as to the right to levy an execution at law on property owned by a railroad com-

pany in fee.' Nor is it now necessary to express an opinion whether under any circumstances the easement of a railroad company may or may not be the subject of levy and sale under execution at law."

The above case was cited with approval in the case of *Connor v. Tenn. Con. Ry.,* 109 Fed. 931, 48 C., C. A. 730, 54 L. R. A. 687, the opinion being written by Judge Lurton, now of the Supreme Court of the United States, in which case it was held that a section of a railroad could not be sold under a decree of court, separate from the franchise, for the purpose of enforcing a contractor's lien. In that case Judge Lurton said: "The general rule is that the physical property of a private corporation is as subject to be sold at judicial sale for the enforcement of a lien, or for the satisfaction of a judgment or decree for debt, as the property of an individual. But an exception exists, upon the principles of public policy, in respect to the property of a quasi public corporation which is essential to the enjoyment of its franchises for the discharge of those public duties for which it was created. Property acquired and held as essential to the operation of quasi public franchises cannot be seized and sold separate and apart from the franchises, without which the latter would be inoperative. Thus, in Tennessee, without regard to the character of the title, the tollhouses and roadway of a turnpike company are not the subject of execution, levy, and sale. 'The weight of authority is,' said Justice Cooper, speaking for the Supreme Court of Tennessee, 'that the exemption of the franchise from levy will protect all property essentially necessary to its exercise, for the obvious reason that the franchise was conferred for a public purpose, and there ought not to be any disposition of the property except in a mode which would secure a continuance of the use of the franchise for the

benefit of the public. The rights of creditors are sufficiently secured by the right to attach or impound the tolls, and, if necessary, to sell the property and franchises together.'—*Baxter v. Nashville & N. Turnp. Co.*, 10 Lea [Tenn.] 488, 493. This doctrine has received very general sanction. Elliott, Railroads, §§ 520, 1074; Morawetz, Priv. Corp. § 1125; *Gue v. Tide Water Canal Co.*, 24 How. 257, 16 L. Ed. 635; *East Alabama R. Co. v. Doe ex dem. Visscher*, 114 U. S. 340 [5 Sup. Ct. 869] 29 L. Ed. 36; *Ammant v. New Alexandria & P. Turnp. Road Co.*, 13 Serg. & R. [Pa.] 210, 15 Am. Dec. 593; *Louisville N. A. & C. R. Co. v. Boney*, 117 Ind. 501, 20 N. E. 432, 3 L. R. A 435."

It seems that in Pennsylvania, statutes of sequestration have been provided for the enforcement of liens against the property and franchises of public utility corporations. In the case of *Reynolds v. Reynolds Lumber Co.*, 169 Pa. 626, 32 Atl. 537, 47 Am. St. Rep. 935, this is said upon the subject: "When the operations of a corporation are matters of direct public interest and concern, its property reasonably essential to the exercise of its franchises is stamped with the character of a public trust. It cannot be aliened by the corporation, nor sold by its creditors piecemeal, so as to stop its operations and defeat the object of its charter. Before the act of 1870 such property could not be taken in execution in this state. The sequestration proceedings of the act of 1836 were suggested by Chief Justice Tilghman in the opinion in *Ammant v. New Alexandria, etc Turnpike Co.*, 13 Serg. & R. (Pa.) 210, 15 Am. Dec. 593, and after the passage of that act it was held in *Susquehanna Canal Co. v. Bonham*, 9 Watts & S. (Pa.) 27, 42 Am. Dec. 315, that the franchises and corporate rights of a canal company and its property necessary to their exercise were incapable of being trans-

ferred or granted away by any act of the company it-
self, or by any adverse process against it, and that se-
questration was the only remedy consistent with the
preservation of the public interests.    The act of 1870
provides a remedy without prejudice to the public in-
terest, by the sale together of the franchises and the
property necessary to their exercise." In notes to the
above case as reported in the American State, and L. R.
A., Reports, may be found many other cases to the
same effect, the weight of which, we think, settles the
law to be that there cannot be a valid sale of a small
part of a railroad right of way in the manner, or with
the purpose, contemplated in the attempted sale in this
case by the appellant city, and that a court of equity
has the power to enjoin such a sale, and diversion from
the public use to which it is being devoted, of quasi
public property.    If any further authority should be
thought necessary to support our conclusion in this
case, we think it can be found in the decisions of the
Supreme Court of the United States.

In the case of *Gue v. Tide Water Canal Co.*, 24 How.
357, 16 L. Ed. 635, which was a bill to enjoin an execu-
tion sale of canal locks and sundry other property of
the canal company, the opinion was written by Chief
Justice Taney; and it was therein held that at common
law a franchise of a public service corporation could
not be sold under execution, and that, as there was no
statute of the state of Maryland authorizing such sales,
or sequestration, the courts, state and federal, could
not lawfully order such sales, and that a court of equity
would enjoin any attempt so to do.    In that case,
among other things, it was said by that great Chief
Justice: "The tidewater canal is a great thoroughfare
of trade, through which a large portion of the products
of the vast region of country bordering on the Susque-

hanna river usually passes, in order to reach tidewater and a market. The whole value of it to the stockholders consists in a franchise of taking toll on boats passing through it, according to the rates granted and prescribed in the act of the assembly which created the corporation. The property seized by the marshal is of itself of scarcely any value apart from the franchise of taking toll, with which it connected in the hands of the company, and, if sold under this fieri facias without the franchise, would bring scarcely anything, but would yet, as it is essential to the working of the canal, render the property of the company in the franchise, now so valuable and productive, utterly valueless. Now, it is very clear that the franchise or right to take toll on boats going through the canal would not pass to the purchaser under this execution. The franchise being an incorporeal hereditament, cannot, upon the settled principles of the common law, be seized under a fieri facias. If it can be done in any of the states, it must be under a statutory provision of the state; and there is no statute in Maryland changing the common law in this respect." We do not think that any of the cases relied on by appellant hold to the contrary. The decisions of the Supreme Court of the United States, cited by appellant, merely hold: (1) That in certain cases it is a question of fact as to whether given railroad property is benefited by a given public improvement of other highways; and (2) that exemptions in charters of railroads, from certain taxation, do not include local improvements or assessments, such as are sought to be enforced in this case. Such is the holding of *L. & N. R. R. Co. v. Barber,* 197 U. S. 434, 25 Sup. Ct. 466, 49 L. E. 819, as to the first proposition; and such is the holding in *I. C. R. R. Co. v. Decatur,* 147 U.

S. 202, 13 Sup. Ct. 293; 37 L. Ed. 132, as to the last proposition.

As to the other authorities relied upon by appellant, they hold in line with what is said by Mr. Elliott, above quoted by us, and a part of which is quoted by appellant in its brief. As before stated, it is neither necessary nor proper that we should now, upon this appeal, pass upon the question as to whether or not the right of way of a railroad company can, in a given case, be assessed as abutting property, for local improvements of streets, for the reason that this question was not passed upon by the lower court; but, as counsel for appellant have cited and relied upon the text of Mr. Elliott, which we have quoted above, without committing ourselves to the "rule" as stated by Mr. Elliott, or to that of those holding the contrary view, we merely refer to the case of *Detroit, Grand Haven & Milwaukee Ry. Co. v. Grand Rapids,* 106 Mich. 13, 63 N. W. 1007, 28 L. R. A. 793, 58 Am. St. Rep. 466, where authorities are cited, wherein it is said: "The first question is settled by the case of *Lake Shore, etc., Ry. Co. v. Grand Rapids,* 102 Mich. 374 [60 N. W. 767, 29 L. R. A. 195], which holds that railroad property cannot be sold for these assessments. The right of way so assessed contains the main track and one side track. It has nothing else upon it, and is used for no other purpose. It has already been dedicated to a public use, and the question is presented whether a railroad right of way can be assessed by municipal corporations for public improvements. So far from being any benefit, it is established by the evidence that the opening and paving of the street were a damage to the complainant. A right of way cannot be benefited by the opening and paving of a street across it. None of the buildings of the complainant are within two blocks of this crossing. We

can see no benefits, immediate or prospective, to the complainant. The division of the right of way into three parcels was arbitrary, as were also the valuations and supposed benefits. The point is so clearly and concisely stated by the Supreme Court of Pennsylvania that we quote the opinion in *Philadelphia v. Philadelphia, etc., R. R. Co.*, 33 Pa. 43: 'The municipal authorities paved the Gray's Ferry Road for a considerable distance, at a place where it lies side by side with the defendant's railroad, and now seek to charge them with half of the cost of it; but they cannot do it. Their claim has no foundation, either in the letter of the law or in its spirit, nor in the form of the remedy. Not in the letter, because the defendants do not own the land sought to be charged, and have only their right of way over it. Not in the spirit, because the paving laws are means of compulsory contribution among the common sharers in a common benefit; and, as a railroad cannot, from its very nature, derive any benefit from the paving, while all the rest of the neighborhood may, we cannot presume that the compulsion was intended to be applied to them. Not in the form of the remedy, because the execution for this sort of claim is levari facias, a writ not commonly allowed against corporations, and which would hardly produce much when directed against a public right of way. It would be strange legislation that would authorize the soil of one public road to be taxed in order to raise funds to make or improve a neighboring one.' "

It follows that the trial judge was correct in overruling the appellant's demurrer to the bill, which sought to enjoin the sale of a part of appellee's right of way.

Affirmed.

DOWDELL, C. J., and ANDERSON and DE GRAFFENRIED, JJ., concur.