# CASES

IN

# THE SUPREME COURT

OF

# PENNSYLVANIA.

---

## East Side Bank *v.* Columbus Tanning Co. Chautauqua County National Bank's Appeal.

*Corporations—Foreign corporations—Insolvency—Preferences—Conflict of laws.*

The directors of a New York corporation at a meeting held in New York authorized the president of the company to prefer a New York creditor by confessing judgment to him in Pennsylvania, although the corporation was at the time insolvent, and the laws of New York forbid preferences by corporations upon the eve of insolvency: *held* that distribution was properly awarded to the execution creditor.

Such creditor cannot be deprived of his rights under the judgment because the foreign corporation was doing business in Pennsylvania without having complied with the requirements of the Pennsylvania statutes.

*Corporations—Execution—Preferences.*

The property of a private corporation having no public duties to perform may be taken in execution and sold under an ordinary writ of fieri facias.

Argued May 9, 1895. Appeal, No. 165, Jan. T., 1895, by the Chautauqua County National Bank, from order of C. P. Warren Co., Sept. T., 1893, No. 21, distributing proceeds of sheriff's sale. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM and FELL, JJ. Affirmed.

Exceptions to auditor's report distributing a fund raised by sheriff's sale of real and personal property.

From the record it appeared that the Columbus Tanning Company is a corporation of the state of New York, and the East Side Bank a banking corporation, organized under the laws of New York. All of the property real and personal of the Columbus Tanning Company is situated in Warren county.

On Aug. 24, 1893, a note, with warrant of attorney for confession of judgment for $11,500 due on demand, was signed at Warren, Pennsylvania, by Columbus Tanning Company, by David C. Taylor president, in favor of said East Side Bank. On the same day a fieri facias was issued on said judgment and the personal property of defendant in and about its tannery at Columbus was levied upon. This personal property consisted of bark, hides, tools, liquors in vats, leather, etc.

Subsequently, and before the sale by the sheriff, the Chautauqua County National Bank, of Jamestown, N. Y., Warren Savings Bank and others, issued writs of foreign attachment against said Columbus Tanning Company, and attached the property previously levied upon by the sheriff under said writ of East Side Bank, as well as the real estate of said company.

Subsequently the personal property so levied upon was sold by the sheriff, and the real estate of the Columbus Tanning Company was sold by the sheriff upon a writ issued on said judgment of the East Side Bank, and the fund realized from both sales was, at the instance of the several creditors, brought into court for distribution, and George N. Frazine, Esq., was appointed auditor.

The indebtedness of the Columbus Tanning Company to the East Side Bank was incurred in the city of New York by loan by said bank to said company.

All the proceedings looking to the giving of the note and the entry of judgment thereon and the issuing of execution were had in New York city on August 22, 1893, at which date the board of directors held a meeting in said city and passed a resolution authorizing its president to execute the note with warrant of attorney for the confession of judgment therein. In pursuance of the authority so granted in the city and state of New York, David C. Taylor went to Warren, Pa., and there executed the note in question.

The Chautauqua Bank claimed that the judgment of the East Side Bank was void in Pennsylvania, because void under

the statutes of New York forbidding preferences by insolvent corporations. It also claimed that even if the judgment were valid the proceeds of the sale should be distributed pro rata among all the creditors. The auditor sustained the validity of the judgment, and awarded the fund to the East Side Bank, and declined to recommend a pro rata distribution.

Exceptions to the auditor's report were overruled by the court in an opinion by NOYES, P. J., which was in part as follows:

"It is claimed, however, that inasmuch as the Columbus Tanning Company was a New York corporation, and the laws of New York forbid preferences by corporations upon the eve of insolvency, and every act of a corporation which operates to give such a preference is by the courts of that state declared to be void, therefore the act of the directors in the state of New York in conferring authority upon the president to prefer the plaintiff in Pennsylvania was void, it being conceded that the corporation was then insolvent, and hence that Taylor was without any authority to confess the judgment. Also, that the judgments and executions are void because the Columbus Tanning Company, a foreign corporation, was doing business in this state without having complied with the requirements of our statutes.

"As to this last position, the defendant can certainly derive no benefit from any contract made here, or any other act done illegally. But the East Side Bank is guiltless of wrongdoing as well as innocent of any knowledge of the wrong done by the officers and agents of the defendant. Even if we regard the confession of judgment as an act of doing business within this state, prohibited by the statute, the company cannot take advantage of its own wrong, nor have its creditors any equity by virtue of which the plaintiff's claim can be set aside in favor of their subsequent liens: Kilgore v. Smith, 122 Pa. 48 ; Watertown Fire Ins. Co. v. Simons, 96 Pa. 520 ; Thorne v. Travelers Ins. Co., 80 Pa. 15. The right of an insolvent corporation to prefer a creditor by judgment or otherwise in Pennsylvania, if done without fraud, is conceded. And if we concede that, for the reasons asserted, the president of the company had no authority to confess the judgment in favor of the East Side Bank, yet as its validity is not questioned by the defendant it

cannot be set aside by third parties who are claiming its fruits. It is only for fraud that a solemn judgment of a court of record may be attacked by third parties : Gordon v. Preston, 1 Watts, 385 ; Drexel's App., 6 Pa. 272.

"But we are not satisfied that Taylor was without lawful authority.　That the general statutes of New York do not and cannot operate to control the distribution of the property of a New York corporation, not situate in that state, is conceded. This being so, we must construe the statute as intended to operate only in respect to property subjected to the control of the New York authorities.　Or, if the language does not admit of such construction, so much of the law as is beyond the power of the legislature to enforce and which undertakes to deal with matters over which it has no jurisdiction is void.　A mere brutum fulmen is not a law.　It may be that the statute operates upon the corporation and not merely upon its property ; but it so operates only in respect to the property subject to New York control.　The precise language of the statute is not before us.　And we are not advised that it imposes any penalties upon the corporation.　We assume that it merely avoids preferences given in violation of its provisions.　The cases cited by the counsel for the East Side Bank seem conclusive of this question unless we can distinguish them, as the learned and able counsel for the Chautauqua National Bank attempts to do, by saying that in those cases the preference was given by the corporation itself, acting within the foreign state, while in the case before us it is given by an agent of the corporation, whose authority was conferred by an act of the directors done in the state where the corporation was seated and in violation of the laws of that state.　But such a distinction cannot be made. It is not in the power of any corporation to enter a foreign sovereignty, or to exist there.　A corporation exists only in contemplation of law, and by virtue of the law, and can no more subsist where the laws by which it was created do not operate than an animal with lungs can live where there is no air.　A corporation, as was said by Chief Justice TANEY, in Bank of Augusta v. Earle, 13 Peters, 588, "must dwell in the place of its creation ; and cannot migrate to another sovereignty."　Yet, although like a bedridden merchant it must remain at home, its agents may traverse the globe and by the

comity of states and nations do business in its name every-
where. It follows that whosoever assumes to act for a foreign
corporation by whatever name he may be called, must act in
the capacity of agent, and his authority, if any he has, be
traceable to the act of the corporation at the place where it is
seated. If special authority to prefer a creditor in Pennsylva-
nia is void because given in New York, then any general
authority which included that would be void also, pro tanto,
whether exercised by a board of directors or otherwise. We
think, therefore, that the learned auditor was right in his con-
clusions upon this question.

" The exceptions which complain that the auditor did not
make distribution of the proceeds of the personal estate pro
rata among all of the creditors raise a question of the very
greatest importance to the business world. The claim of the
exceptants rests upon the doctrine announced by Judge SLAGLE,
of the common pleas of Allegheny Co., in McKee v. McKee's
Rocks Oil Co., 41 P. L. J. 59. The substance of this decision
is, that where the personal property of an insolvent corporation
which is necessary to the carrying on of its business is sold
upon execution, the proceeds are to be distributed as upon the
insolvency of an individual, viz : first, to liens existing prior to
the issuing of the process by which the fund is raised; and
second, pro rata among the general creditors. The argument
is, that the execution given by the act of 1870 is in lieu of
the sequestration proceedings provided by the act of 1836, and
the proceeds of the sale under such a writ are to be distributed
in accordance with the provisions of that act. And it seems to
be held that where property, essential to the transaction of the
business for which the corporation is organized, is taken in
execution, and the corporation is in fact insolvent, the fund is
to be treated as if raised by sale under the special process pro-
vided by the act of 1870, even if the actual execution be an
ordinary fi. fa.

" That the act of 1870 provides a new remedy in lieu of
sequestration which is to be resorted to only in cases in which
sequestration could have been applied for; and the rule of dis-
tribution provided by the sequestration sections of the act of
1836 is to be applied to the funds raised upon such a writ, is
quite clear and well settled : Phila. and Baltimore Railway

Co.'s App., 70 Pa. 355; Bayard's App., 72 Pa. 453; Hogg's App., 88 Pa. 195.   And where all the property and franchises of the corporation which are only subject to sale upon the special writ are in fact seized and sold under an ordinary fi. fa., such a sale may be ratified by the corporation: Lusk's App., 108 Pa. 152.   And it seems logical to say that the proceeds should be distributed as if the proper writ had been used to produce them.   But the act of 1836 authorizes proceedings against corporations by a fi. fa. commanding the sheriff to "levy the sum recovered together with the costs of suit, of the goods and chattels, lands and tenements," of the corporation defendant: Pamph. Laws 774, section 72.   And sequestration was only awarded after such a writ had been returned nulla bona.

" The special writ, provided by the act of 1870, issues upon the same condition ; and only after all the property which can lawfully be seized by the first execution has been exhausted: Fox v. Hemphill, 8 Phila. 639; Flagg v. Farnsworth, 12 Weekly Notes of Cases, 500; Bank of Titusville v. Gibbs, etc., 13 Weekly Notes of Cases, 174; Guest v. The Water Co., 142 Pa. 610.   The proceeds of the property, whether real or personal, sold upon the first or ordinary fi. fa. or upon a vend. ex. based upon it, are to be distributed in the ordinary way to the lien creditors, including the plaintiff in the writ.   Such is the plain implication of the statute and no case has come to our notice by which a doubt is cast upon it.   The proceeds of sales under the special fi. fa., as we have seen, are, however, to be distributed as in proceedings in insolvency.

" Our question, therefore, resolves itself into this : Was the property sold by the sheriff in this case such as might lawfully be seized by the ordinary writ of fi. fa. which issues under the act of 1836 upon the præcipe of the plaintiff alone, or was it such as could only be taken in execution after return of nulla bona upon such a writ by the special execution given by the act of 1870?

" The act of 1836 directs the sheriff to seize the 'goods and chattels, lands and tenements' of the corporation to satisfy his fi. fa.; and provides, if sufficient property cannot be found, that the 'rents, issues and profits, tolls and receipts from any road, canal, bridge or other work, property or estate' shall be seques-

tered for the benefit of the creditors.   It seems to be assumed
that a corporation may own property not properly falling within
either of the classes of 'goods,' 'chattels,' 'lands' or 'tenements.'
And that roads, canals and bridges, at least, are such property.
The precise provisions of this act were suggested by Chief Jus-
tice TILGHMAN, in Ammant v. The Turnpike Road, 13 S. & R.
210, in which it was decided that the turnpike road was neither
lands, tenements, goods nor chattels, within the meaning of the
statutes relating to executions, but was inseparably connected
with the franchises of the company and could not be sold upon
execution.   In Susquehanna Canal Co., v. Bonham, 9 W. & S.
27, it was decided  that a house used by the canal company as
an office and toll house, could not be sold on execution for the
same reason.   It was further stated by SERGEANT, J., that 'privi-
leges granted to corporations to construct turnpike roads,
canals, etc., are conferred with the view to the public use and
accommodation ; ' and cannot be voluntarily parted with nor
taken away by creditors.   In Loudenslager v. Benton, 3 Grant,
384, and Plymouth Railroad Co. v. Colwell, 39 Pa. 337, the
same principles are applied to similar cases ; as they are also
in Shamokin Valley Railroad Co v. Livermore, 47 Pa. 465, by
AGNEW, J., who calls attention to a line of cases relating to
taxation, which further illustrates the distinction between prop-
erty held by corporations, subject to all the usual incidents, and
property so connected with the exercise of some public fran-
chise as to be inalienable except by express provision of law.
Land held by a corporation for private purposes is taxable the
same as land held by individuals : Carbon Iron Co. v. Carbon
County, 39 Pa. 251 ; Lackawanna Iron and Coal Co. v. Luzerne
Co., 42 Pa. 424.   But property necessary for the exercise of its
public franchises is not taxable and is not included in the
enumeration of property in the laws relating to taxation : Le-
high C. & M. Co. v. Northampton County, 8 W. & S. 334 ;
Railroad v. Berks Co.. 6 Pa. 70 ; West Chester Gas Co. v.
Chester Co., 30 Pa. 232.   In like manner it has been held that
the mechanics' lien laws do not apply to the property of a cor-
poration which is necessary to the exercise of its public fran-
chises : Foster v. Fowler, 60 Pa. 27.   In considering these
cases as well as the act of 1836, it must be borne in mind that
a private business corporation is a recent invention ; and such

a thing was rarely known prior to our civil war. In the case last cited Chief Justice THOMPSON classifies corporations, other than municipal, into 'public,' which are those which act as agents of the public directly, such as bridge, turnpike and railroad companies; and 'private' which affect the public only indirectly—simply business corporations. He applies the principles announced in Ammant v. The Turnpike Co., and Susquehanna Canal Co. v. Bonham, supra, to the entry of a lien against the property of a Water Co., holding that the property of such a company necessary to the exercise of its franchises was not subject to lien. In Girard Storage Co. v. Southwark Co., 105 Pa. 248, the real estate of a corporation was held subject to such a lien, not because it was not necessary to its business, but because the corporation exercised no public franchise, and was merely private in character.

" In the light of these cases it seems quite clear that all the property of a corporation which can be properly considered to be goods, chattels, lands or tenements, is subject to execution in the ordinary way. That such of its property, real or personal, as is necessary to the exercise of some public franchise, is to be regarded as forming a part of that franchise and is not subject to execution in the ordinary way, but can only be taken in the lump under the special writ provided by the act of 1870, and sold together to a purchaser or purchasers, whom the law now at least authorizes to exercise the franchises possessed by the corporation. The purpose appears to be to subserve the public convenience by preventing the extinguishment of a public franchise; which was the reason why the process of sequestration was given instead of the ordinary execution, in the act of 1836. That the franchises of a company are not identical with its property, the act itself indicates; for it authorizes the seizure without limit of the coin of a banking company to pay a single debt, although it may not leave in its vaults sufficient to enable the bank to transact business. The act itself therefore precludes the view that property necessary to the transaction of the business for which the corporation was formed must have been sequestered under the act of 1836, or must now be sold under special writ given by the act of 1870.

" Nor is there, in the cases, any distinction based upon solvency or insolvency. The coin of a banking company may be

taken though it be insolvent, if actually doing business ; but a railroad company, solvent beyond question, may not have a dollar's worth of property which can be taken in execution by itself.

" The cases show that it is not property essential to the business but property essential to the exercise of the franchises of a corporation which is exempt from execution. There is some looseness in the popular idea of a franchise. Whether exercised by individuals or by corporations, franchises are such rights, privileges and powers as are specially granted by the sovereignty and exercisable only by virtue of such grant: Anderson's Law Dictionary, ' Franchise ; ' 8 American & English Encyclopædia of Law, 585. Unless the right of perpetual succession be such, a private business corporation possesses no franchises whatever. Certainly the public had no interest in the continuance of its business, nor is there any good reason why any of its property may not be taken upon execution, as it certainly may be taxed or subjected to liens. In Prouty v. Prouty, 155 Pa. 112, the property of a corporation insolvent in fact was sold upon ordinary executions and distributed to the creditors in the ordinary manner. While the question here presented was not raised, the fact that it was not is significant.

" The cases cited and relied upon by the learned court in McKee v. McKee's Rocks Oil Co., do not in our opinion sustain the conclusions there reached. Bayard's Appeal, 72 Pa. 453, the first of these, was a case in which all the property and franchises of a public corporation were sold. Whether the execution was an ordinary fi. fa. or the special writ provided under the act of 1870 in fact, it was treated in the opinion of the court as being the latter. And the only point decided is that in such a case the writ created no lien, and that all the creditors were entitled to participate in the distribution. Nothing bearing upon the question was decided in Fairmount Coal Co.'s Appeal, 14 Weekly Notes, 214. Hopkins' Appeal, 90 Pa. 69, is the first case which gives any color to the doctrine contended for by the exceptants. This case arose upon the distribution of the proceeds of the sale of the property of a private corporation, upon an ordinary fi. fa. Between the parties it was agreed that it should be disposed of as if upon a bill in equity filed by creditors of the corporation against the first lien creditors, alleg-

ing fraud in their executions. It was held that the first liens were fraudulent in law, being preferences given by the officers controlling the corporation to themselves. Treating the case as a proceeding in equity, in accordance with the stipulation, the court permitted other creditors to intervene, and setting aside the fraudulent writs distributed the money (the corporation being insolvent) first, to a landlord's claim for rent; second, to the executions not tainted with fraud; and third, to the general creditors. This decree was affirmed by the Supreme Court, and it seems to us directly against the position taken by the exceptants and held by the learned court of common pleas of Allegheny county. For the liens not fraudulent were recognized in the distribution, although it was upon these executions that the fund was raised; and the distribution to the general creditors was only of what remained after satisfying the liens, and was distinctly made upon the assumption that the court was acting as a court of equity, and distributing assets of an insolvent corporation. If there is anything in the opinion delivered by Mr. Justice MERCUR inconsistent with this decree, and with the uniform current of authority prior to this case, we think we ought to attend rather to the points decided by the entire court than the views expressed in the opinion, especially as there appears to have been no discussion of the question here involved in that case. It seems too much to say that because Justice MERCUR, whose statement of the law is perfectly sound as applied to sales of franchises and appurtenant property under the act of 1870, overlooked the distinction between such cases and sales of property not connected with public franchises upon ordinary executions, (the point not being suggested in the argument before him,) that therefore the distinction so well established by the cases has been abolished by the Supreme Court. Nor is the remark in the per curiam opinion in Bank v. The Coke Co., 137 Pa. 601, to be taken as the deliberate opinion even of the judge by whom it was written, much less of the court before whom the question was not raised.

" The case of Guest v. Water Co., 142 Pa. 610, involves the validity of a mechanic's lien; but the opinions both of Judge WEAND in the trial court, and Mr. Justice McCOLLUM in the Supreme Court are based upon the view of the law expressed in this opinion, and both seem to us wholly inconsistent with the view of the exceptants.

" The mind naturally inclines to equality of distribution. The consideration of equity and justice suggested in the able opinion of Judge SLAGLE may be worthy the attention of the legislature. But the law of Pennsylvania as it now stands seems to favor the diligent creditor of a corporation, as well as of an individual. Whether solvent or insolvent their property is subject to seizure for the satisfaction of the creditor by whom it is seized, by the express provisions of the act of 1836. If the course of distribution is to be changed by the mere fact that a company is insolvent without any regard to public interests, the change should come from the legislature and not from the court.

" We have examined these interesting questions with the greatest care because we have been led to a different conclusion from that arrived at by a court whose opinions we respect; and what is still more embarrassing, from the conclusions of Judge MORRISON of the 48th district, holding a special court in this county, in the case of Reynolds v. Reynolds Lumber Co. We regret that we are obliged to differ with judges of so much ability and learning, but the rule which they have adopted seems to us to be without authority in the law, and likely to lead to great confusion in practice.

" The views which we entertain make it unnecessary to consider the question, but it is at least worthy of serious consideration, whether a foreign corporation can ever hold property in this state, not subject to levy by the ordinary process. How can it possess or exercise public franchises in a foreign state? And if it cannot, how can it have property so annexed to such franchises that the public interest will prevent its taxation or its sale?

" The learned auditor was right in refusing to distribute the proceeds of the sale to the general creditors."

*Errors assigned* were (1) in sustaining the validity of the judgment of the East Side Bank; (2) in awarding the fund to the East Side Bank.

*W. E. Rice* and *W. W. Wilbur, Frank W. Stevens, D. I. Ball* and *Hickley & Rice,* for appellant.—This judgment may be assailed collaterally in this proceeding by the appellant upon

the ground of fraud: Hall v. Hamlin, 2 Watts, 354; Venner v. Carson, 63 Pa. 440; Mitchell v. Kintzer, 5 Pa. 216; Black on Judgments, sec. 293; Palmer v. Martindell, 43 N. J. Eq. 90.

The consent of the board of directors was never legally given to any of the acts leading up to the judgment: Robinson v. Bank of Attica, 21 N. Y. 406; Kingsley v. First Nat. Bank, 31 Hun, 329; Throop v. Hatch Lith. Co., 125 N. Y. 530.

Neither the Columbus Tanning Company nor its board of directors ever took any action in the state of Pennsylvania authorizing the giving of the note and the confession of judgment. Those acts were performed by David C. Taylor, the president of the corporation. He having never been legally authorized by the corporation or its board of directors to perform such acts, had no power as president of the corporation to perform any: Stokes v. N. J. Pottery Co., 17 Vroom, 237; McCullough v. Moss, 5 Denio, 567; Titus v. R. R. Co., 37 N. J. Law Reports, 98; Chicago etc. Ry. v. James, 22 Wis. 198; Walworth Co. Bank v. Farmers Loan Co., 14 Wis. 325; Fulton Bank v. N. Y. & Sharon Canal Co., 4 Paige, 127; Morawetz on Corporations, secs. 531, 537; Morse on Banks and Banking, secs. 143, 144, p. 292, 295; Ogden v. Murray, 39 N. Y. 202.

There should be no question that the act of giving a demand note for a debt which is not due, and a power of attorney to confess judgment on the same, is the doing of business: Lasher v. Stinson, 145 Pa. 30; Cincinnati Assurance Co. v. Rosenthal, 55 Ill. 85; In re Comstock, 3 Sawyer, 218; Bank of British Columbia v. Page, 6 Ore. 431; Company v. Rathbun, 5 Sawyer, 32; Semple v. Bank of British Columbia, 5 Sawyer, 88, 394; Ætna Ins. Co. v. Harvey, 11 Wis. 394; Charter Oak Life Ins. Co. v. Sawyer, 44 Wis. 387; Farmers' Ins. Co. v. Harrah, 47 Ind. 236.

The judgment was a fraud upon the creditors of the Columbus Tanning Company for the reason that it increased the liability of the Columbus Tanning Company to the East Side Bank by the amount of the five per cent commissions.

The distribution should have been made pro rata: Hopkin's App., 90 Pa. 69; First Nat. Bank v. Coke Co., 137 Pa. 601; Guest v. Water Co., 142 Pa. 610; Phila. & Balt. R. R. Co.'s App., 70 Pa. 355; Bayard's App., 72 Pa. 453; Hogg's App., 88 Pa. 195; 3 Trickett on Liens in Pennsylvania, sec. 380; Prouty v. Prouty, 155 Pa. 112.

*W. M. Lindsey, James O. Parmlee* with him, for appellee.—
The validity of this judgment was not affected by the statute
of New York, prohibiting domestic corporations in contempla-
tion of insolvency from giving a preference: Morawetz on
Private Corporations, 967; White v. Howard, 38 Conn. 342;
Ellsworth v. St. Louis Ry. Co., 98 N. Y. 648; Wattson v.
Campbell, 38 N. Y. 153; Jones, Chat. Mortg. sec. 299; Whart.
Confl. Laws, sec. 525; Hervey v. Rhode Island Locomotive
Works, 93 U. S. 664; Green v. Van Buskirk, 5 Wall, 307;
Keller v. Paine, 107 N. Y. 83; Guillander v. Howell, 35 N. Y.
657; Warner v. Jaffray, 96 N. Y. 248; Binns v. Sanders, Pa.
Com. Pl. 28 W. N. C. 321.

The action of the board of directors of the Columbus Tan-
ning Company had no reference to anything to be done in the
state of New York, and no reference to any property in the
state of New York, but had entire reference to something
to be done in another state, and inasmuch as the act that the
president was authorized to do was to be done in another state
the sole question is whether that act was lawful in the state
where it was to be done: Powder River Cattle Company v.
Custer County, 22 Pac. 383; Maxwell v. Reeves, 9 S. R. 104.

The validity of the judgment and execution in favor of the
East Side Bank is not questioned by the defendant, and it can-
not therefore be questioned by third parties who are claiming
the money arising from the sale of the property of the defend-
ant on said execution: Gordon v. Preston, 1 Watts. 385; Drex-
el's App., 6 Pa. 272.

OPINION BY MR. JUSTICE FELL, July 18, 1895:

The appeal in this case presents two questions. The first
relates to the validity of the judgment under which the defend-
ant's property was sold and the right of the appellant to raise
the question in the proceeding before the auditor; the second
to the rights of the creditors of a corporation in the distri-
bution of the fund arising from the sale of its property by
the sheriff. Both questions were correctly decided by the
learned judge of the common pleas. The second arises out of
a state of facts substantially the same as those in Roy's Ap-
peal, No. 113, January term, 1895, in which the opinion of the
court has been filed.

Judgment affirmed.