182     139
32 SC ¹620

## Frank Smith, sheriff, *v.* Altoona & Philipsburg Connecting Railroad Company, Appellant.

*Statutes—Construction of statutes.*

All statutes in derogation of the common law, or out of the course of the common law, are to be strictly construed.

*Corporations—Execution—Acts of June 16, 1836, sec. 72, and April 7, 1870—Sheriff—Fees—Mileage.*

Before the property and franchises of a corporation may be sold by special fi. fa. under the Act of April 7, 1870, P. L. 58, demand must have been made by the sheriff at the principal office of the company, as provided by the Act of June 16, 1836, sec. 72, P. L. 774, and the sheriff of the county in which the writ issues may go to any county in the state where the prin-

cipal office of the corporation is situated to make such demand, and for such service he is entitled to fees and mileage.

Where the sheriff executes a number of writs for different plaintiffs against the same defendant, he is entitled to separate mileage on each writ.

Argued April 19, 1897.    Appeal, No. 340, Jan. T., 1896, by defendant, from judgment of C. P. Clearfield Co., Feb. T., 1896, No. 146, on case stated.    Before STERRETT, C. J., GREEN, WILLIAMS, MCCOLLUM, DEAN, and FELL, JJ.    Affirmed.

Case stated to determine the liability of the defendant to pay certain costs, as follows:

1. Frank Smith, the plaintiff above named, since the early part of January, 1895, has been, and still is, the sheriff of Clearfield county, Pa.

2. The defendant is a railroad company, organized under the laws of Pennsylvania, under the provisions of the act of the general assembly, of April 4, 1868, P. L. 62, and the acts supplementary thereto, to exist for the term of nine hundred and ninety-nine years, according to the articles of association filed and recorded in the office of the secretary of the commonwealth of Pennsylvania, on the 11th day of July, A. D. 1892, and patent issued thereon the same day.

3. The purpose of said company was to construct, maintain and operate a railroad for public use, in the conveyance of persons and property between Janesville, in Clearfield county, and Philipsburg, in Centre county, Pa.    The latter place being in the border of Centre county, and extending to the Clearfield county line.

4. The railroad of said company was commenced, and part of it made and used, before the year 1895, and its use has been continued since that time.    All of it is in Clearfield county, Pa.    The part in operation begins in Clearfield county opposite Philipsburg, near the line of Clearfield and Centre counties, and continues ten miles, more or less, toward Janesville, on the route located for said railroad.

5. The said company never had an office in Clearfield county, neither do its chief officers reside there.    Its general or principal office was and is in the city and county of Philadelphia, in which city its president, Samuel P. Langdon, resides.    In August and September, 1895, at the time of the alleged service of

the executions hereinafter mentioned, said Samuel P. Langdon, president of said company, had his office at room No. 915 Drexel building, in the city of Philadelphia, where the general business of said company was transacted by its chief officers, and which, for the purposes of this suit, is admitted to have been the general or principal office of the company at that time.

The company also had and has an office at Philipsburg, Centre county, Pa., at which very much of the business, relating to the construction of said railroad in Clearfield county, was transacted.

6. In the year 1895, before the last of August, there were inter alia, thirty-two judgments obtained or entered in the court of common pleas of Clearfield county, Pa., in favor of various plaintiffs against the said Altoona & Philipsburg Connecting Railroad Company. On each of these thirty-two judgments there was an execution writ of fieri facias issued returnable to September term, 1895. A list of said judgments, and executions to September term, 1895, is hereto annexed and made part of this case stated—showing, also, in each case, the disputed costs claimed by F. Smith as sheriff, from the said railroad company, defendant, and for which said defendant denies any legal liability.

7. That the said Frank Smith as sheriff of Clearfield county, having the said thirty-two writs of fi. fa., returnable to September term, 1895, in his hands, went to the city of Philadelphia, and on August 31, 1895, about 11:30 A. M., during business hours, went to room No. 915 in the Drexel building, in the city of Philadelphia, a distance of two hundred and sixty-six miles direct, from the courthouse of Clearfield county, and Samuel P. Langdon, the president of said company, being absent, then and there made demand for payment of each of said writs, debt, interest and cost, on George B. Thatcher, chief clerk of said office, but payment was not made upon said demand.

Afterwards, on the 2d day of September, 1895, during business hours, about 2:30 P. M. of said day, with the same thirty-two writs of fi. fa. in his hands, the said sheriff went to the office of the defendant company in Philipsburg, Centre county, Pa., a distance of about seventeen miles direct from Clearfield, and, the president of said company being absent, then and there demanded of George M. Case, general superintendent of said

railroad, payment of the debt, interests and costs on each of said writs ; but payment was not made upon said demand.

A copy of the return, as amended, made by said sheriff, to each of said thirty-two writs of fi. fa. is hereto annexed and made part of this case stated.

8. That for said demand of payment in Philadelphia, with mileage in going and returning, the said Frank Smith, as sheriff, made the charge, and claims to have and collect from the said defendant upon each of said thirty-two writs, the sum of $1.00 for service of the same, and of $31.92 as mileage, making, upon all the said writs, a total for service in Philadelphia of $1,053.44.

Also, for the said demand of payment in Philipsburg, Centre county, Pa., with mileage, the said Smith as sheriff makes the further charge of $2.00 on each of said thirty-two writs, which he claims the right to demand and collect as costs from the said defendant, making for the services of said writs at Philipsburg the further sum of $64.00.

The above makes a total amount of $1,117.44 claimed by the said sheriff as costs, which he is entitled to demand and collect from the said defendant, and in regard to which the defendant denies liability.

9. Afterwards in 1895 alias executions were issued on said judgments, having indorsed thereon the foregoing disputed costs, as well as other costs which were not disputed. On application of defendant to the court to have said disputed costs set aside as a charge against the said defendant, a rule to show cause, etc., was granted by the court. Afterwards the court made an order staying and restraining, for the present, the further execution of writs for the said disputed costs, upon payment being made by the defendant, of the debt, interest and uncontested costs, upon said thirty-two judgments and executions. Such payment was then made by the defendant, leaving unpaid only the aforesaid disputed costs, and the rule to show cause still pending. Afterwards, December, 1895, the court made a further order, allowing the said Frank Smith, sheriff, and said defendant, the Altoona & Philipsburg Connecting Railroad Company, in order to have the right of said sheriff to demand and collect said disputed costs, from said defendant, legally determined in one suit, to make a case stated for trial in the usual way, reserving the right of plaintiffs in said thirty-two judgments to appear

and be heard on the one side or the other in such case stated. The said plaintiffs in said judgments, or their attorneys, to have due notice of the same. A copy of said order of court is hereto attached and made part of this case stated.

If the court be of opinion that under the facts presented, the said Frank Smith is legally entitled to demand and collect from the said Altoona & Philipsburg Connecting Railroad Company the aforesaid claim, amounting to $1,117.44, or any portion of the same, then judgment to be entered for the plaintiff, Frank Smith, for the said sum, or for such portion of the same, as, in the opinion of the court, the said plaintiff is entitled to demand, and collect from the said defendant. But if the court be of opinion that the plaintiff, Frank Smith, is not legally entitled to demand and collect from said defendant any portion of the said disputed costs, then judgment to be entered for the defendant.

The court in an opinion by SAVIDGE, P. J., of the 8th judicial district, specially presiding, entered judgment for the plaintiff on the case stated.

*Error assigned* was in entering judgment for the plaintiff on the case stated.

*J. B. McEnally*, with him *D. W. McCurdy*, for appellant.— The general rule is that the territorial jurisdiction of the court and its officers is confined within the county line. Without direct legislative authority they have no jurisdiction beyond it: 22 Am. & Eng. Ency. of Law, 109; Avery v. Seely, 3 W. & S. 497; King v. Cartee, 1 Pa. 147.

Statutes are not presumed to make any alteration in the common law further or otherwise than the act expressly declares: Endlich on the Interpretation of Statutes, sec. 127; Esterley's App., 54 Pa. 192.

Under the Act of June 16, 1836, P. L. 774, sec. 72, the proceedings for service of execution, by demand at the principal office, applies to all corporations alike, except municipal corporations.

A consideration of the Act of March 22, 1817 (vol. 6, Smith's Laws, p. 439), from which this part of the law of 1836 was taken, leads to the conclusion that the law does not require the sheriff to go beyond his county.

The legal practice from 1836 to the present time has conformed to such construction of the law as keeps it in harmony with the general rule. No case appears in the books in which the sheriff, under this law of 1836, went with his execution outside of his county to make such demand at the principal office of the defendant corporation.

The argument that such demand at the principal office outside of the county was intended and authorized by the act of 1836, in order to establish insolvency and lay proceedings for sequestration, is purely imaginary. This argument that the demand on the defendant in an execution is intended as notice to him for his protection is not supported by the law itself.

*W. C. Miller*, for appellee.—The precedent demand at the principal office of the corporation, as provided by the 72d section of the act of June 16, 1836, and a return by the sheriff, was absolutely necessary to authorize the appointment of a sequestrator : Phila. & Balt. Cent. R. R. Co.'s App., 70 Pa. 355 ; Guest v. Water Co., 142 Pa. 610 ; Hassall v. Union Canal Co., 2 Pa. C. C. 147.

The special fi. fa. supersedes and is in lieu of the right of sequestration as provided by the act of June 16, 1836 : Bank v. Mfg. Co., 13 W. N. C. 174 ; Fox v. Hempfield R. R. Co., 8 Phila. 639 ; Hassall v. Canal Co., 2 Pa. C. C. 147 ; Guest v. Water Co., 142 Pa. 610 ; Mausel v. Railway Co., 171 Pa. 606 ; East Side Bank v. Columbus Tanning Co., 170 Pa. 1 ; Reynolds v. Reynolds Lumber Co., 169 Pa. 626 ; Phila. & Balt. Cent. R. R. Co.'s Appeal, 70 Pa. 355 ; Bayard's Appeal, 72 Pa. 453.

Statutes are to be construed so as to best effectuate the intention of the makers, which sometimes may be collected from the cause or occasion of passing the statute : Improvement Co. v. Com., 94 Pa. 450.

The legislature intended by the passage of the act of 1836 to provide a remedy for the collection of debts from public corporations only : Girard Storage Co. v. Southwark Co., 105 Pa. 248 ; McLeod v. Normal School, 152 Pa. 575 ; Reynolds v. Reynolds Lumber Co., 169 Pa. 626 ; East Side Bank v. Columbus Tanning Co., 170 Pa. 1.

Our contention, however, is, that the act of 1836 provided a reasonable, harmonious, and complete remedy by execution

against public corporations, to which class the defendant corporation belongs, so that all of their property might be liable for the claims of their creditors: Phila. & Balt. Cent. R. R. Co.'s App., 70 Pa. 355; Second Nat. Bank of Titusville v. Gibbs & Sterrett Mfg. Co., 13 W. N. C. 174; Guest v. Water Co., 142 Pa. 610.

The sheriff, the plaintiff in this case, stands upon the plain language of the act of 1836, and contends that it was not only his right, but his bounden duty, to make this service and demand at the principal office of the defendant corporation in the city and county of Philadelphia: East Union Twp. v. Ryan, 86 Pa..459; Act of June 16, 1836, P. L. 775, sec. 73; Turnpike Co. v. Wallace, 8 Watts, 316.

The plain language of a statute should receive the natural meaning which plain men give to it: Com. v. Grant, 2 Woodward, 379; Haddock v. Com., 103 Pa. 243; Harrow Co. v. Rosenberger, 40 Legal Int. 382; Pittsburgh v. Kalchthaler, 114 Pa. 547; Bradbury v. Wagenhorst, 54 Pa. 180.

The sheriff of the county from which the execution issues cannot levy upon the corporate property unless a part of it, at least, is within his county: Hassall v. Canal Co. 2 Pa. C. C. 147.

The record could not have been brought back from Philadelphia county to Clearfield county for the purpose of issuing the special fi. fa., as an exemplification cannot be taken of a judgment entered upon an exemplification and transferred again: Mellon v. Guthrie, 51 Pa. 116.

And a testatum writ of fieri facias could not have issued from a judgment in Philadelphia county, entered there on an exemplification from Clearfield county: Nelson v. Guffey, 131 Pa. 273.

OPINION BY MR. JUSTICE DEAN, July 15, 1897:

All the facts in this case appear in the case stated. On them the learned judge of the court below entered judgment for plaintiff, and defendant appeals. The appeal raises but two questions:

1. Had the sheriff authority, and was it his duty, to execute his writs by going outside the boundaries of Clearfield county to the principal office of the corporation in the city of Philadelphia, and there make demand?

2. If he had such authority, does the law authorize him to charge fees for service of each writ and mileage thereon?

The first question is answered by an interpretation of the act of June 16, 1836. For it is conceded that, if the sheriff was not authorized by that act to go to the general office of the corporation outside his bailiwick to make demand, he had no such authority at common law nor by any other statute.

The 72d section of that act enacts: "All executions which shall be issued against a corporation shall be executed in manner following, to wit: 1. The officer charged with the execution of such writ shall go to the banking-house or other principal office of such corporation, during the usual office hours, and demand of the president or other chief officer, cashier, treasurer, secretary, chief clerk or other officer having charge of such office the amount of such execution with legal costs."

While detached personal or other property of the corporation, after demand thus made, could be seized and sold on the writ, the franchises and corporate property necessary to the operation of a public or quasi-public corporation could not be. By the 73d section, however, on return of nulla bona as to the whole or part by the sheriff, the court was authorized to appoint a sequestrator to sequester the goods, chattels and credits, rents, issues and profits, tolls and receipts, from any road, canal, bridge or other works, property or estate of such corporation. This enabled the execution creditors to reach the franchise and earnings of the company, the incorporeal hereditament; but, as an indispensable prerequisite, demand at the principal office was enjoined. The end sought is so obvious that no argument can obscure it. The proceeding authorized would take from the owners the entire corporate property and place it in possession of a trustee for creditors; before such a result, the complete transfer of property from the owner to his creditor was effected, every principle on which "remedy by due course of law" is based, required reasonable notice to the owner; and very properly, the notice to be effective, must be to those officers who have been intrusted by the stockholders with the management of the property; in the case of all carrying corporations, the corporate property might be in several counties, and the principal office in but one; no matter in which county the judgment may be entered, to answer its purpose, the notice should

be served on those officers having the management of the property, and the act expressly assumes that they will be found at the principal office, without regard to its location. And so stood the law until the act of April 7, 1870, which authorized a special fi. fa. to issue from the court only on application, commanding the sheriff to levy on personal, mixed or real property, franchises and rights of such corporation, and sell the same. The levy to extend to and cover the property, franchises and rights of such corporation, in any and every county of the commonwealth, wherever the same might be. The levy and sale to have same effect as though the property was located in the county where the writ issued. This superseded the proceedings by sequestration under the act of 1836, and it has been so decided in many cases, from R. R. Co.'s Appeal, 70 Pa. 355, in 1871, the year after the passage of the act, down to Bank v. Columbus Tanning Co., 170 Pa. 1, decided only one year ago. But the act of 1870 left untouched the preliminary proceedings directed under the 72d section of the act of 1836 ; before sale of the property and franchises of the corporation under the act of 1870, demand must have been made at the principal office of the company, and return made by the sheriff, after which the special fi. fa. commanding a sale could issue. In Guest v. Water Co., 142 Pa. 610, our Brother McCollum very clearly shows. that the proceeding by special fi. fa. under act of 1870, was only a substitute for that provision in the act of 1836, which authorized sequestration. To the same effect are Mansel v. Railway Co., 171 Pa. 606, and Reynolds v. Reynolds Lumber Co., 169 Pa. 626, and other cases.

Now it must be conceded, that at common law the sheriff would have had no authority to go outside the territorial limits of Clearfield county and serve or make demand on this writ at the office of the company in Philadelphia. And it must be further assumed, that the intention of the legislature to abrogate the common law by a statute must plainly appear, more plainly indeed than its intention to repeal a prior statute. As stated by Judge Endlich, in his work on "Interpretation of Statutes," section 127, "All statutes in derogation of the common law, or out of the course of the common law, are to be strictly construed." But, even strictly construed, in view of the subject and purpose of the act of 1836, it seems to us clear that

the legislature intended to enlarge the territorial jurisdiction of the sheriff in executing this particular writ. Without a restatement of the distinguishing features of public and private corporations, fully noticed in Foster v. Fowler, 60 Pa. 27, it is sufficient to say that this defendant, a railroad company, is a public corporation, which by law must have an office within the state ; and a corporation whose functions so immediately concern the public that any interruption in the exercise of them must greatly inconvenience and damage the public; and further, being purely a common carrier, under its grant or franchise it could lawfully hold little or no property not indispensable to the exercise of its franchise. Prior to the act of 1836, the general property of such a corporation could be taken in execution and sold the same as the property of an individual, but under the decision in Ammant v. Turnpike Co., 13 S. & R. 210, it was, in substance, decided that without a court of chancery there could be no appropriation by the creditor of the franchise; and the hardship to the creditor in permitting the corporation to go on exercising its franchise by the collection of tolls, and perhaps accumulating profits, at the same time contracting debts which it refused to pay, was remarked on by Chief Justice TILGHMAN, who suggested the remedy was exclusively for the legislature, and at the same time expressed the hope that the legislature would afford such remedy by statute. We have no doubt this was the very mischief intended to be done away with by the act of 1836, and the franchise which before that time could not be reached by the creditor was placed within his grasp. And the remedy was confined to public corporations alone, because, from the very nature of their organization and functions, the mischief which demanded statutory remedy was peculiar to them. In fact, as stated by Judge NOYES, who rendered the judgment in the common pleas in Bank v. Tanning Co., 170 Pa. 1, it was doubtful if there was a private business corporation in existence in 1836. Therefore, the intention of the act of 1836 was to create a distinct and appropriate method of procedure, whereby sequestration could be had of the earnings of public corporations for the benefit of their creditors, without disturbing them in the exercise of their corporate operations. But it was not intended that the corporate property should be immediately taken from the possession

of the corporation officers and turned over to a sequestrator; detached property, not necessary to conducting its public business, might be 'seized; but of this, as already noticed, there probably would be little or none. The sheriff was directed to serve and make demand of his writ at the principal office of the corporation, and then make return to the court if his writ remained unpaid in whole or in part; and then came the appointment of the sequestrator. It is obvious that in most cases demand at the principal office had no graver consequences than the service of a rule to show cause why a sequestrator should not be appointed. The method of procedure accomplished the same end which would have been attained by a court of chancery in England, when the creditor sought the aid of that court in the collection of his debt against a public corporation.

The return by the sheriff that his writ was unpaid, while it did not, beyond question, establish the insolvency of the corporation, did establish that all the property of the corporation was out of the reach of the creditor, except the franchise, and now the way was opened to get at that by sequestration; and sequestration could not be had until after demand at the principal office; nor, can the special fi. fa. instead of it, under the act of 1870, issue without the precedent service of fi. fa. and demand at the principal office, issued under act of 1836. The whole proceeding is harmonious, appropriate and, from the circumstances, well adapted to effect the purpose. It is highly favorable to the corporation, and somewhat burdensome to the creditor, but counsel for this appellant argues that the sheriff had no authority to go beyond the limits of his county; that it was his duty, if he found no principal office of the company within that county, to return his writ nulla bona, and thereupon it was the duty of the court to direct the special fi. fa. for the sale of the franchise and property of the corporation under the act of 1870. Under such limitation of the authority of the sheriff there might have been a seizure and sale without the knowledge of the company; it might then very well have argued that such could not have been the intention of the act of 1836, but that the sheriff should have gone outside of his county for service of the writ at the principal office. The literal reading of the act does not limit the authority of the sheriff to any less territory than the boundaries of the commonwealth.

It is not a case where by implication the authority is enlarged beyond the express language, but one where we are asked to say that by implication the authority is restricted within county bounds. Having in view the old law (the common law), the mischief and the remedy, we hold that the act of 1836, relative to fi. fas. issued on judgments against public corporations, authorizes the sheriff to serve his writ and make demand at the principal office of the corporation, wherever the principal office may be situated within the commonwealth.

The complaint of appellant, because of the taxation of fees and mileage on each writ, is not sustained. The act known as the "Fee Bill Act," expressly says that the officer "shall have travelling expenses on each writ for each mile travelled." While it is decided that, where a number of writs between the same parties are executed at the same time by the officer, but one mileage is taxable, yet, as held by the learned judge of the court below, following Terry v. Gregg, 26 P. L. J. 94, this has no application to this case, where in each there is a different plaintiff.

The judgment is affirmed.