In re NAYLOR MFG. CO.

(District Court, E. D. Pennsylvania. February 13, 1905.)

No. 1,665.

1. BAILMENT—CONTRACT—CONVERSION OF EXECUTORY SALE.

A contract for a sale of property may, while still executory, be changed to a bailment with an alternative of future conversion into a sale, and an agreement therefor is valid, although verbal, and reduced to writing after delivery has been made.

2. FOREIGN CORPORATIONS—VALIDITY OF CONTRACTS—FAILURE TO COMPLY WITH STATE STATUTE.

The failure of a foreign corporation doing business in Pennsylvania to register as required by Act April 22, 1874 (P. L. 108), cannot be taken advantage of by the corporation or by its trustee in bankruptcy to avoid its contracts made in the state.

[Ed. Note.—For cases in point, see vol. 12, Cent. Dig. Corporations, § 2561.]

In Bankruptcy. On certificate from referee.

George J. Edwards, Jr., and Franklin L. Lyle, for trustee.
Samuel W. Cooper and William Potter Davis, Jr., for claimant.

HOLLAND, District Judge. The Naylor Manufacturing Company, a corporation doing business in this district, was adjudicated a bankrupt on July 22, 1903. The Fairbanks Company, a New Jersey corporation, filed a petition claiming certain personal property, which it alleges it leased to the bankrupt, and asked for an order awarding this property, which consisted of machinery, to it. The referee found that the bankrupt was the bailee of this property, and, it having been sold by the trustee, awarded to the defendant the sum of $297.65, the proceeds of the sale. The trustee objected to the finding of the referee, and upon his petition the referee certified to this court the two following questions: (1) Is the contract in question a bailment or conditional sale, and is the petitioner entitled to the proceeds of the sale of the machinery, or have such proceeds become the property of the bankrupt estate? (2) Was the contract, if a bailment, between the Naylor Manufacturing Company and Fairbanks Company, void by reason of the noncompliance by the Naylor Manufacturing Company with the provisions of the Pennsylvania act of April 22d, 1874 (P. L. 108), it being a corporation organized under the laws of the District of Columbia, and not having filed a statement of its affairs with the Secretary of State and Auditor General as required by this act?

It is conceded that the agreement between the Fairbanks Company and the bankrupt, dated March 11, 1903, is a bailment of the property in question, but as this property had been in the possession of S. Elmer Naylor, the predecessor of the Naylor Manufacturing Company, bankrupt, from August, 1902, to February, 1903, when he transferred it to the Naylor Manufacturing Company, and held by it until the execution of the bailment, that under the evidence adduced before the referee the original transfer was a sale, and that the subsequent change made by the execution of the contract of bailment was not binding upon the trustee in bankruptcy.

The facts are these: In August, 1902, Naylor negotiated for the purchase of some machinery from the Fairbanks Company through Richards, its salesman. Before the delivery of these goods, Tattman, the Fairbanks manager, ascertained that Naylor's financial standing was not such as to warrant them in giving him credit for the machinery, and, as a result, a conference was had between Naylor and Tattman, and it was agreed between them that the machinery should be leased to Naylor by the Fairbanks Company. The sale slips had the word "Leased" marked upon them, and the word "Lease" was set opposite this machinery in the original entries in the Fairbanks Company's books. Tattman, upon examination, insisted the property had been leased, and that the object was to retain possession of it until the price was paid. After all the machinery had been delivered to Naylor, a writing was executed by Naylor, which the parties called a lease. The terms of it, however, are not set forth, nor is the date of its execution stated, but the evidence shows that both the Fairbanks Company and Naylor regarded it as what is commonly known as a lease. It was destroyed either before or after the execution of the lease dated March 11, 1903, which is conceded to be a bailment. This latter, however, was executed on May 8, 1903, and dated March 11, 1903; but before the property in question was transferred by Naylor to the Naylor Manufacturing Company a conference was had by Naylor with the Fairbanks Company, and the latter objected to a transfer of the bailed property until a new agreement was entered into between it and the bankrupt company. The bankrupt assented to this, and the property was transferred by Naylor to the Naylor Manufacturing Company, and, subsequent to the transfer, to wit, May 8, 1903, the contract of bailment was executed, and the first writing, which was called a lease, was destroyed. It appears, therefore, that the original agreement between Naylor and Richards, the Fairbanks' salesman, was a contract of sale, but before the delivery of the property it was ascertained that Naylor's credit was not such as to warrant them in selling this property to him outright, and it was agreed that he should take it upon an agreement of bailment. This the parties to the contract had a right to do before the delivery of the goods. The fact that the original intention of the parties is to make a sale, and such is the legal effect of their first agreement, does not prevent a change, while it is still executory, into a bailment, with an alternative of future conversion into a sale on the compliance with the stipulated conditions. Stiles v. Seaton, 200 Pa. 114, 49 Atl. 774. And this subsequent change to that of a bailment may be verbal, and later reduced to writing. Rose v. Story, 1 Pa. 190, 44 Am. Dec. 121; Henry & Co. v. Patterson, 57 Pa. 346; Stiles v. Seaton, supra.

While it is true the evidence does not show the exact terms of the original contract, yet the evidence, both oral and documentary, is uncontradicted that the property was held by Naylor as bailee, and the circumstances were such as to confirm this conclusion. Before this machinery was transferred to the bankrupt corporation, the consent of the Fairbanks Company was necessary, and obtained through a conference with them. All this shows that the actions of both parties from the beginning were such as to indicate they regarded the original

agreement as a bailment, and the fact that they subsequently executed the contract in evidence, which is conceded to be a bailment, confirms the contention that the transfer of the property was a bailment from the beginning, and belonged to the Fairbanks Company until the terms of the agreement had been complied with. They are, therefore, entitled to the proceeds of the sale of this property, unless, as is contended by the trustee, that the contract of this foreign corporation is null and void because of their failure to register in this state in compliance with the act of 1874. This contention, we think, cannot be permitted to prevail. The proposition that this corporation can take advantage of its own omission to comply with the requirements of the Pennsylvania law is against public policy, and in direct conflict with a long line of decisions to the contrary. Banks v. Columbus, 170 Pa. 1, 32 Atl. 539; Swan v. Insurance Company, 96 Pa. 37; Watertown v. Simons, 96 Pa. 520; Hagerman v. Empire Slate Co., 97 Pa. 534.

Great reliance is placed upon the case of Swing v. Munson, 191 Pa. 582, 43 Atl. 342, 58 L. R. A. 223, 71 Am. St. Rep. 772, but an examination of this case shows that it was an effort on the part of the trustee of an insolvent corporation organized and doing business in the state of Ohio to collect assessments against a policy holder in the state of Pennsylvania, it not having previously complied with the laws of the state of Pennsylvania requiring foreign insurance companies to register before effecting insurance within the state, and it was held that Swing, the trustee, could not recover. But this is an entirely different proposition from the question involved in this case. Here the foreign corporation came into the state of Pennsylvania, and began business, entered into the contract with the Fairbanks Company for this property without having previously registered; and the decisions of the courts of Pennsylvania are uniform in holding that a corporation under such circumstances, while it will not be permitted to enforce its contracts in a state without complying with the registration laws, will not be permitted to take advantage of its own wrong in failing in such compliance when found here doing business, and it is endeavored by residents of the commonwealth to enforce contracts against them.

The findings of the referee are sustained.